FOR OFFICIAL USE ONLY

# COMMANDER DIRECTED
# REPORT OF INVESTIGATION

PREPARED BY
COLONEL JOHN C. INGLIS
MARYLAND AIR NATIONAL GUARD

CONCERNING
175 WG/CC DIRECTED COMMAND INQUIRY
INTO ALLEGED MISCONDUCT OF
LTCOL KARL ELDERS, MdANG

19 MARCH 2002

FOR OFFICIAL USE ONLY

# TABLE OF CONTENTS

**SECTION I. Scope, Authority, Background and Allegations (Tabs A and B)**

SCOPE AND AUTHORITY (Tab A) .......... 1

BACKGROUND AND ALLEGATIONS (Tab B)

BACKGROUND .......... 3

ALLEGATIONS .......... 4

CHRONOLOGY OF EVENTS .......... 5

**SECTION II. Findings, Analysis, and Conclusions (Tab C)**

FINDINGS .......... 7

ANALYSIS .......... 7

CONCLUSIONS .......... 11

**SECTION III. Index of Witnesses and Exhibits (Tabs D and E)**

INDEX OF WITNESSES/SUBJECTS/SUSPECTS (TAB D) .......... 12

INDEX OF EXHIBITS (TAB E) .......... 13

**SECTION I**

## SCOPE AND AUTHORITY: Tab A

On 9 March 2002, BG David A. Beasley, MdANG, Commander 175th Wing, appointed Colonel John C. Inglis to conduct an investigation into allegations that LtCol Karl Elders, MdANG, Commander 135th Airlift Squadron committed sexual harassment, battery, and maltreatment against a female subordinate member of his command.



**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 175 WING (ANG)**
**BALTIMORE MARYLAND**

9 March 2002

**MEMORANDUM FOR** 135 AG/CC

**FROM:** 175 WG/CC

**SUBJECT:** Appointment as Investigating Officer

1. You are hereby appointed to conduct a command inquiry into allegations of misconduct concerning LtCol Karl Elders, 135 AS/CC. Specifically, it is alleged that LtCol Elders committed acts of sexual harassment, battery, and maltreatment against a female subordinate member of his command. Preliminarily, the details of these allegations are set forth in Attachments 1 and 2 to this memorandum.

2. The purpose of your inquiry is two-fold: assessment of the veracity of the allegations; and, to make command recommendations as to what, if any, command response should ensue. Please complete your inquiry and report your findings in writing no later than 15 March 2002. Contact Maj 175 WG/JA, to obtain legal guidance during the conduct of this inquiry.

DAVID A. BEASLEY, Brig Gen, MDANG
175th Wing Commander

Attachments:
1. MFR, Maj Raul Q. Willem, 7 Mar 02
2. MFR, Maj James M. Mentges, 8 Mar 02

# Tab B: BACKGROUND AND ALLEGATIONS

## BACKGROUND

The allegations in question came to light in late February 2002 when the Commander of the 175th Security Forces Squadron, Major Raul Willem, was in discussion with LtCol Maria Diaz and she relayed: that she was "having a problem with another officer"; that she was "nervous and upset"; and, in Major Willem's view, "was crying as she told me the story." LtCol Diaz identified the officer she was having problems with as her commander, LtCol Karl Elders and described the problems as including unwanted and repeated sexual advances, physical contact, and harassment.

Major Willem submitted his observations in a Memorandum for the record to 175 WG/CC, BG Beasley, on 7 March 2002. On 8 March 2002, Major Michael Mentges, 135 Airlift Squadron Training Officer, filed a memorandum citing similar concerns based on conversations he had with LtCol Diaz from the late Fall of 2001 through early March 2002. Both individuals reported that LtCol Diaz stated she was afraid to come forward because she was concerned that "no one would believe her" and that LtCol Elders would exact retribution on her.

On 9 March 2002, BG Beasley appointed Colonel John C. Inglis, MdANG, to conduct the command inquiry that is documented in this report.

LtCol Diaz is a traditional guardsman who serves as a board certified surgeon in the Baltimore medical community. During the course of the investigation, another female officer, Major Doris Maurer, the fulltime 135th Airlift Group Deputy for Maintenance, testified to having experienced similar, though less aggressive, sexual advances from LtCol Elders. Multiple witnesses testified to having heard the same report of concerns from LtCol Diaz, some soon after the events in question, and well before this inquiry was initiated.

LtCol Elders has served as the Commander of the 135 Airlift Squadron for two years, as a traditional guardsman in the Maryland Air National Guard for over 11 years, and as a commercial airline pilot in his civilian occupation. He was interviewed by this Investigating Officer on 15 March. After being informed of the nature of the allegations, he declined to provide any verbal testimony, citing his right to legal counsel. On 17 March 2002, he submitted a letter stating that allegations of "sexual harassment, battery, and maltreatment against a female subordinate… are totally false"[1]. At his own discretion, LtCol Elders did not participate in an interview wherein specific allegations could be surfaced by the investigating officer and addressed by LtCol Elders. He further did not identify any witnesses who should be questioned. LtCol Elders did state that he objected to the selection of his commander as the officer directed to conduct the initial inquiry[2].

The findings and conclusions documented in this report show there is substantial and credible testimony by both LtCol Diaz and Major Maurer asserting that LtCol Elders did commit the acts alleged, to include: Sexual harassment, cruelty and maltreatment of a subordinate, assault consummated by battery, and conduct unbecoming an officer. Other witnesses corroborated some, though not all, elements of their testimony. No one discredited their testimony.

---

[1] See LtCol Elders' letter of 16 March 2002 at Tab D (3).

[2] See 15 March 2002 interview by Colonel Inglis of LtCol Elders at Tab D (3) as wells as Major summary of the same interview, also at Tab D (3)



## ALLEGATIONS

**1. Sexual harassment.**

LtCol Maria Diaz, 135 AS/FS, and Major Doris Maurer, 135 AG/DCM, allege that LtCol Karl Elders, 135 AS/CC, made repeated unwelcome and sexually oriented advances towards them over a period of several years[3].

**2. Cruelty and maltreatment (UCMJ, article 93)**

LtCol Maria Diaz alleges that LtCol Karl Elders sexually harassed her, an act constituting cruelty and maltreatment given her status as a military subordinate of LtCol Elders.

**3. Assault consummated by battery (UCMJ, article 128)**

LtCol Maria Diaz alleges that LtCol Karl Elders forcibly grabbed and twisted her arm on one occasion[4]. LtCol Maria Diaz alleges that LtCol Karl Elders attempted to kiss her on two occasions and insert his tongue in her mouth on one of the two occasions, all against her will[5].

**4. Conduct unbecoming an officer (UCMJ, article 133)**

LtCol Diaz and Major Maurer allege that LtCol Karl Elders' committed sexual harassment, which would constitute "conduct unbecoming an officer."[6] Major Maurer also alleged that LTCOL Karl Elders used insulting and defamatory language regarding LtCol Elders' Wing Commander[7].

**Note regarding allegations:**

The allegations were framed using the UCMJ which, given the suspect's status as a traditional guardsman throughout most of this period, may not specifically pertain. Nonetheless, the definitions set forth in the Punitive Articles of the UCMJ are relevant to defining the alleged misconduct. Moreover, Article 47 of the Annotated Code of Maryland, the State Militia Code, states that commissioned officers may be tried by court-martial for the following offenses: unmilitary or unofficer-like conduct, oppression or injury of any under his command; conduct unbecoming an officer and a gentleman, or for conduct prejudicial to good order and military discipline."

---

[3] See following sworn statements: LTC Diaz statements of 9 March and 14 March at Tab D (1); and Major Maurer's statement of 14 March at Tab D (2).
[4] See LtCol Diaz statement of 14 March, Tab D (1).
[5] See LtCol Diaz statement of 14 March, Tab D (1).
[6] See LtCol Diaz statement and sworn testimony of 14 March 2002, Tab D (1), and Major Maurer's statement and sworn testimony of 14 March 2002, Tab D (2)
[7] See Major Maurer's written statement of 14 March at Tab D (2)

## CHRONOLOGY OF EVENTS

| DATE | EVENT |
|---|---|
| | Note: throughout the entire period shown, LtCol Elders served as Commander 135 AS and LtCol Diaz as his subordinate (as 135 AS Flight Surgeon). |
| 25 May 2000 | LtCol Diaz and LtCol Elders serve on crew of a 135 AS local flight. LtCol Diaz alleges that during this flight, LtCol Elders unexpectedly kissed her on the lips when he approached her while she was sitting alone in the rear of the aircraft. She told him to stop and he complied. She does not report the incident out of embarrassment and in the hope it will simply "go away." LtCol Elders' pay records show that he was on Title 32 active duty status this day[8]. |
| Summer 2001 | LtCol Elders offered LtCol Diaz to travel with him to Amsterdam on a free "buddy pass,"[9] where he would "show her a good time" and they could go "window shopping." There was no mention of LtCol Elders' wife or LtCol Diaz' husband. She declined the offer. LtCol Diaz stated that she believed LtCol Elders knew or perceived that his suggestions would be taken as going beyond an offer of casual friendship. |
| Summer 2001 | LtCol Elders called LtCol Diaz into his office to discuss her application for the State Air Surgeon's job (an O-6 position at State Headquarters). LtCol Elders told her that "as a minority, she should have an advantage over other candidates" and that she "should seek to claim and use her status as a minority" in her application for the job. LtCol Elders said he had a good relationship with the State leadership and that he could put in a good word for her should she want him to do so. While she was sitting on a doublewide sofa chair, he got up from his seat across the room, crossed the room, and approached LtCol Diaz. She thought he was going to retrieve something from his jacket on the sofa next to her. Instead, LtCol Elders leaned over, put his hand on LtCol Diaz' shoulder, kissed her on the lips and attempted to push his tongue into her mouth. She physically pushed him away and told him to stop. He did stop. She left the office and made no report of the incident because she was embarrassed. It was around this time that she resolved she would never be alone with LtCol Elders again. |
| September 2001 | LtCol Elders was working on an OPR for LtCol Diaz and called her at home on a Monday. Monday is an off day for the MD ANG. LtCol Elders asked her to come to his office on the base so that she and he could review the OPR he'd written. Not wanting to be alone with him, she refused. |
| 14 Dec 2001 | LtCol Diaz testified that during a Christmas party on this date for all C-130 personnel (traditional and fulltime personnel) LtCol Elders approached her and said "You picked the wrong team" in a manner that conveyed anger on his |

[8] See Tab E (2) for LtCol Elders' pay record summary.

[9] LtCol Elders is a United Airlines pilot and can secure free "buddy" passes for travel of friends and family.

part. She believed he was referring to her having conversations with Major Mentges, Major Wilkinson, and LtCol Thomas, all fulltime 135 AG personnel. LtCol Elders' pay records show that he was on Title 32 active duty status this day[10].

21 Dec 2001 — LtCol Diaz testified that after a Christmas party on this date (for fulltime 175 WG personnel), she had discussions with a number of individuals to include Major Mentges. When she walked away from a discussion with Major Mentges, she was approached by LtCol Elders who "grabbed and twisted her wrist, squeezed it very tight," and asked her "What the hell did you say to him?" She replied that she had simply provided advice to Major Mentges on how to improve his relationship with LtCol Elders (namely that both of them should "grow up and simply commit to working with one another"). LtCol Elders' pay records show that he was on Title 32 active duty status this day[11].

Late Feb 2002 — LtCol Diaz has conversation with Major Willem, Commander 175 Security Forces Squadron, wherein he observes her unusual apprehension and concern. During the ensuing conversation she relays her concerns over the conduct of LtCol Elders.

7 Mar 2002 — Major Willem documents his concerns about LtCol Elders' treatment of LtCol Diaz in a Memorandum for the Record and submits to Commander 175 Wing, BG Beasley.

8 Mar 2002 — Major Michael Mentges, 135 Airlift Squadron Training Officer, documents similar concerns in a Memorandum for the Record and submits to Commander 175 Wing, BG Beasley.

9 Mar 2002 — BG Beasley appoints Colonel John C. Inglis to conduct an initial inquiry into allegations that LtCol Karl Elders, MdANG, Commander 135th Airlift Squadron committed sexual harassment, battery, and maltreatment against a female subordinate member of his command.

9-19 Mar 2002 — Colonel Inglis conducts requested inquiry.

During course of inquiry, Major Doris Maurer, 135 AG/DCM, testifies that from approximately 1998-2001, LtCol Elders repeatedly embraced her or touched her in ways that made her uncomfortable. She reported that on more than one occasion, he hugged her and said, "if only he weren't married." Major Maurer testifies that she responded by ignoring his advances and avoiding further contact. She further reports that LtCol Elders disparaged senior leadership within the 175 Wing. She testified that she found no basis for his allegations.

[10] See Tab E (2) for LtCol Elders' pay record summary.
[11] See Tab E (2) for LtCol Elders' pay record summary.



# SECTION II. FINDINGS, ANALYSIS, CONCLUSION (TAB C)

## FINDINGS

**Finding 1:** *The allegation of sexual harassment against LtCol Diaz is substantiated in complainant testimony.* To wit, LtCol Elders made repeated, unwanted, sexual advances towards LtCol Diaz which constituted sexual harassment.

**Finding 2:** *An added allegation of sexual harassment against Major Maurer is substantiated in complainant testimony.* To wit, LtCol Elders sexually harassed Major Maurer during the period 1998 – 2001.

**Finding 3:** *The veracity of the charges is substantiated through the consistent testimony of multiple witnesses.* To wit, it is unlikely that the allegations against LtCol Elders are fabricated.

**Finding 4**: *The allegation of cruelty and maltreatment is substantiated in complainant testimony.* To wit, LtCol Elders committed cruelty and maltreatment towards a subordinate member of his command, LtCol Maria Diaz.

**Finding 5:** *The allegation of assault consummated by physical battery is substantiated in complainant testimony.* To wit, LtCol Elders committed assault consummated by physical battery.

**Finding 6:** *The allegation of conduct unbecoming of an officer is substantiated in complainant testimony.* To wit, LtCol Elders committed conduct unbecoming of an officer, both through repeated acts of sexual harassment and in his disparagement of his senior leadership.

## ANALYSIS

### 1. Allegation: Regarding the allegation of Sexual harassment.

**Analysis:** AFI 36-2706 defines sexual harassment as "A form of sexual discrimination that involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term of a person's job, pay, or career; submission to or rejection of such conduct by a person is used as a basis for career or employment decisions affecting that person; such harassment has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment."

**Finding 1:** ***The allegation of sexual harassment against LtCol Diaz is substantiated in complainant testimony.* To wit, LtCol Elders made repeated, unwanted, sexual advances towards LtCol Diaz which constituted sexual harassment.**



**Discussion:** LtCol Maria Diaz, 135 AS/FS, provided clear and compelling testimony that LtCol Elders sexually harassed her for a period dating from at least mid-2000 to the present[12].

These include an unwanted kiss aboard a local training flight on probably 25 May 2000[13], an offer to travel alone with him to Amsterdam so that he could "show her a good time" in the summer of 2000[14], a request that she join him for a private meeting in his office when the base was otherwise unoccupied in the Fall of 2001[15], and an unwanted kiss with an attempt to insert his tongue in her mouth in the Fall of 2001[16]. The latter of these was aggravated by LtCol Elders' strong suggestion to her that he could do things to advance her career if she stuck with him[17]. Throughout the period from mid-2000 through the present, LtCol Diaz consistently rejected LtCol Elders' advances[18].

Regarding her claim that she was kissed against her will on a local flight in the summer of 2000, a record of flight was found to have occurred on 25 May 2000 that is most likely the flight referenced. A list of that flight record is attached as an exhibit at tab E-1.

**Finding 2:** ***An added allegation of sexual harassment against Major Maurer is substantiated in complainant testimony.*** **To wit, LtCol Elders sexually harassed Major Maurer during the period 1998 – 2001.**

**Discussion:** Major Maurer provided clear and compelling testimony regarding this charge in her written statement of 15 March and her testimony of the same date. She testified that LtCol Elders made repeated advances towards her dating back as far as 1998. These advances were characterized by Major Maurer as occasional touches, shoulder massages and brushes that exceeded the occasional inadvertent physical contact that occurs in any work setting. Major Maurer testified that on more than one occasion, LtCol Elders embraced her and said something of the form "if only I wasn't married." [19] Major Maurer testifies that she responded by ignoring his advances and avoiding further contact.

**Finding 3:** ***The veracity of the charges is substantiated through the consistent testimony of multiple witnesses.*** **To wit, it is unlikely that the allegations against LtCol Elders are fabricated.**

---

[12] See 14 March testimony of LtCol Diaz and her written statement of the same date at Tab D (1)

[13] See 14 March testimony of LtCol Diaz, her written statement of the same date, Tab D (1); and the flight manifest given in exhibits at Tab E (1).

[14] See 8 March statement of Major Mentges, Tab D (5), that was read and corroborated by LtCol Diaz in her 9 March statement and amplified in her statement of 14 March; and 10 March interview with Major Wilkinson, Tab D (7).

[15] See 14 March testimony of LtCol Diaz, her written statement of the same date, Tab D (1), and Major Mentges' statement of 8 March, Tab D (5)

[16] See 14 March testimony of LtCol Diaz and her written statement of the same date

[17] See LtCol Diaz statement of 14 March, Tab D (1)

[18] See LtCol Diaz' statement of 14 March and her interview of the same date, Tab D (1)

[19] See Major Maurer's 15 March 2002 testimony and her accompanying written statement of same date, Tab D(2)



**Discussion:** LtCol Diaz's testimonial evidence is credible. She is a respected medical surgeon within the Baltimore medical community and has been married for 21 years. Every witness who commented on her credibility and/or integrity stated that it was beyond reproach[20].

Both of the principal complainants (LtCol Diaz and Major Maurer) were reluctant to come forward and did so only after others first surfaced the concerns[21]. Multiple witnesses corroborated that LtCol Diaz' was experiencing difficulty with LtCol Elders well before the concerns surfaced formally in this Commander Directed Inquiry[22]. No witness surfaced any reason or suspicion that would have called into question LtCol Diaz' or Major Maurer's credibility.

It is important to note that one witness, LtCol , 135 AS/DO, testified that there are significant tensions between LtCol Elders and fulltime personnel within the 135 AS[23]. LtCol Lunt further noted that LtCol Diaz once had a heated exchange with LtCol Elders during a unit leadership meeting but that his observation of the relationship between LtCol Elders and LtCol Diaz was always "one of professionalism"[24]. LtCol also testified that he found LtCol Diaz to be a credible and trustworthy person who he "did not think was the kind of person who would fabricate" these charges[25].

## 2. Allegation: Cruelty and maltreatment (UCMJ, article 93)

**Analysis:** Article 93 of the UCMJ defines cruelty and maltreatment as "cruelty toward, or oppression and maltreatment of, any person subject to his orders." The article also notes that "Sexual harassment may constitute such an offense."

**Finding 4:** ***The allegation of cruelty and maltreatment is substantiated in complainant testimony.*** **To wit, LtCol Elders committed cruelty and maltreatment towards LTCOL Diaz.**

**Discussion**: As the 135 AS Flight Surgeon, LtCol Maria Diaz was a direct subordinate of LtCol Elders for the period of the complaint (2000-present). Given LtCol Diaz' status as a direct subordinate and the finding of probable cause in LtCol Elders' alleged sexual harassment of her, this allegation is supported. Moreover, there is testimony that LtCol Elders was cruel/oppressive towards LtCol Diaz. Major Mentges testified that LtCol Diaz' was "scared by LtCol Elders' actions and was afraid to be around him."[26] LtCol testified that LtCol Diaz seemed increasingly tense in recent months and was taking active measures to avoid

[20] Statements and interviews with Willem (7 and 9 March) Mentges (7 and 9 March), Lunt (10 March), and Wilkinson (10 March) at Tab D (4), D (5), D (6), and D (7).
[21] Allegations were first surfaced in the Memoranda of Majors Willem (7 March) and Mentges (8 March).
[22] See following statements/interviews: Major Mentges, Major Willem, Major Maurer, Major Wilkinson, and LtCol Thomas at Tab D (5), D (4), D (2), D (7), and D (8).
[23] See LtCol Lunt's interview of 10 March and his accompanying written statement at Tab D (6)
[24] See LtCol Lunt's written statement of 10 March at Tab D (6)
[25] See LtCol Lunt's interview of 10 March at Tab D (6)
[26] See Major Mentges written statement of 12 March 2002 at Tab D (5)



coming into contact, or flying, with LtCol Elders[27]. Major Willem testified that LtCol Diaz told him that LtCol Elders was making her "life a living hell"[28].

## 3. Allegation: Assault consummated by battery (UCMJ, article 128)

**Analysis**: Article 128 of the UCMJ defines assault consummated by a battery as (a) that the accused did bodily harm to a certain person; and (b) that the bodily harm was done with unlawful force or violence. The article further notes that the assault "must be done without legal justification or excuse and without the consent of the person affected. 'Bodily harm' means any offensive touching of another, however slight".

**Finding 5: *The allegation of assault consummated by physical battery is substantiated in complainant testimony.* To wit, LtCol Elders committed assault consummated by physical battery.**

**Discussion:** LtCol Maria Diaz alleged that LtCol Karl Elders forcibly grabbed and twisted her arm at the unit Christmas party of 21 December 2001[29]. One witness, Major Maurer, corroborated that LtCol Diaz and LtCol Elders were both present at the party in question[30]. Another witness, Major Mentges, reported that LtCol Diaz called him using her cell phone on her way home on 21 December and reported that LtCol Elders had "grabbed her wrist very firmly and twisted her arm in an uncomfortable manner behind her back."[31] Two other witnesses, Majors Willem and Wilkinson, testified that LtCol Diaz described the event to them prior to the launch of this inquiry in a manner consistent with her testimony to this investigating officer[32].

LtCol Maria Diaz also provided testimony that LtCol Karl Elders attempted to kiss her on two occasions and insert his tongue in her mouth against her will on one of the two occasions, all against her will[33]. While neither of these events were directly observed by others, several witnesses testified that LtCol Diaz provided contemporary descriptions to them of her belief that LtCol Elders was making repeated sexual advances towards her[34].

## Allegation 4. Conduct unbecoming an officer (UCMJ, article 133)

**Analysis**: Article 133 of the UCMJ defines conduct unbecoming an officer as "action or behavior which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the

---

[27] See LtCol Thomas' sworn statement and interview of 19 March 2002 at Tab D (8).
[28] See Major Willem's written statement of 7 March 2002 at Tab D (4).
[29] See LtCol Diaz' testimony of 14 March and her accompanying interview at Tab D (1).
[30] See Major Maurer's interview of 14 March and her accompanying written statement at Tab D (2).
[31] See Major Mentges' written statement of 12 March 2002 at Tab D (5)
[32] See Major Willem's written statement of 7 March and Major Wilkinson's interview and written statement of 10 March at Tabs D (4) and D (7), respectively
[33] See LtCol Diaz' written statements and interviews of 9 March and 14 March at Tab D (1)
[34] See Major Mentges 8 March written statement and Major Wilkinson's 10 March interview and written statement



perfect gentleman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty." The article also states that "using insulting or defamatory language to another officer in that officer's presence or about that officer to other military persons" and "committing or attempting to commit a crime involving moral turpitude" also constitute "conduct unbecoming".

**Finding 6: *The allegation of conduct unbecoming of an officer is substantiated in complainant testimony.* To wit, LtCol Elders committed conduct unbecoming of an officer, both through repeated acts of sexual harassment and in his disparagement of his senior leadership.**

**Discussion:** The allegations of sexual harassment have been substantiated under previous allegations.

Major Maurer's testimony surfaced allegations that LtCol Karl Elders used insulting and defamatory language regarding LtCol Elders' Wing Commander. She noted that LtCol Elders referred to the Wing Commander as being a "coward" for having 'avoided service in the Gulf War.'[35] Given that this testimony occurred late in the investigation and exceeded the focus and scope of the initial investigation, it was not a principal line of inquiry for this investigation.

## CONCLUSIONS

There is substantial and credible testimony to support the aforementioned allegations against LtCol Karl Elders.

Submitted to 175 WG//CC on 19 March 2002

JOHN C. INGLIS, COLONEL, MdANG

[35] See Major Maurer's written statement of 14 March at Tab D (2)