UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KARL L. ELDERS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. MJG-02-3892 |
| | * | |
| MARIA C. DIAZ | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>DECLARATION OF CHARLES ROBINSON</u>**

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this declaration in support of the Plaintiff's Opposition to Defendant Maria C. Diaz's Motion for Summary Judgment.

2. I recently retired from the Maryland Air National Guard as a Chief Master Sergeant after serving more than 25 years. I served in the 135th Operations Support Fight for 23 years and 7 years as the Chief of Flight Services. The plaintiff, LtCol Karl Elders, was the squadron commander for the 135th Airlift Squadron. Both our units were part of the larger 175th Wing. I have known LtCol Elders for 12 years. I also know the defendant, LtCol Maria Diaz. Indeed, I interacted with her for about 5 years. I also served fours years as a Traditional Guardsmen and 21 years as an Active Guard Reservist (AGR)

3. I served as an Equal Employment Opportunity Counselor for the Maryland Air National Guard during the period of January 2000 through September 2002. My training included: EEO Counseling , 2000, Writing EEO Counselor Report, 2000, Alternative Dispute Resolution, 2000, Mediating Employee Disputes, 2001, and Conflict Across Cultures, 2001. All my training was received from the Graduate School, U.S.

Department of Agriculture (The Government's Trainer). Handling sexual harassment complaints was specifically part of my responsibilities.

4. I currently serve as the Pastor of St. Stephens A.M.E. Church, in Easton, Maryland, where I have served for the past five years.

5. I am very familiar with the allegations underlying this litigation. In fact, on May 10, 2002, I was one of the witnesses who was interviewed under oath by Col Arthur Werts, of the New Jersey National Guard, who handled the investigation of LtCol Diaz's allegations of sexual harassment claims against LtCol Elders.

6. My role as the 175th Wing EEO representative places me in a unique position to comment on the arguments set forth by LtCol Diaz that her allegations against LtCol Elders took place in her line of duty and scope of employment. I have carefully reviewed the declaration filed in support of LtCol Diaz by Felton Page, Chief of the National Guard Bureau Directorate for Equal Opportunity. Let it be clear that I fully agree with Mr. Page that sexual harassment cannot be tolerated within the National Guard or anywhere, whether in the military or civilian context. A system must be in place that sufficiently protects an individual from filing legitimate and truthful complaints regarding allegations of sexual harassment. In the military context, we have very specific policies and procedures to implement these protections. However, based on my review of the facts in this case, notwithstanding what Mr. Page asserts, the governing regulations and policies that apply to the Maryland Air National Guard indicate LtCol Diaz was neither acting in her line of duty or scope of employment, particularly when she allegedly discussed her claims of sexual harassment with Maj James Mentges, Maj Raul Willem and Maj Doris Maurer.

7. With respect to sexual harassment matters, the Maryland Air National Guard is governed by several different policies that flow from the Department of Defense and other federal agencies. Most of the policies merely implement one another down the chain-of-command, i.e., the Department of Defense adopts a policy which then goes to

the National Guard Bureau, which then goes to the Maryland National Guard and then down to the Maryland Air National Guard and so on.

8. In this case, National Guard Regulation (NGR) 600-22/ANGI 36-3 (March 30, 2001), is the primary operative document that best controls the procedures and policies surrounding the reporting of sexual harassment complaints. Those in the Maryland Air National Guard are bound by it. It recognizes that "[a]ll National Guard personnel are entitled to serve in an environment free from sexual harassment." If a policy or procedure is not reflected in this document, it likely does not exist. I am certainly not aware of any significant policy procedures that might exist elsewhere but are not in this document.

9. This NGR created a Military Discrimination System which specifically:

> establishes policies and procedures for filing, processing, investigating, settling, and adjudicating discrimination complaints in the Army National Guard (ARNG) and Air National Guard (ANG). It implements Title VI of the Civil Rights Act of 1964, as amended, DoD Directives 1350.2, and 5500.11, Army Regulation 600-20, and Air Force Instruction 36-2706, prohibiting discrimination based on race, color, religion, gender, national origin, or reprisal.

Sexual harassment complaints are included within the category of discrimination. NGR 600-22, 1.10(citing DoD Instruction 1350.3).

10. NGR 600-22 specifically addresses the filing of both formal and informal complaints. "The chain of command will be the primary channel for resolving discrimination complaints. Individuals will be encouraged to use command channels for redress of grievances....The sole mechanism for appealing the disposition of an informal complaint shall be to file a formal complaint." NGR 600-22, 1.7(f).

11. Mr. Page asserts that it is within "the line of duty and scope of employment for a National Guard member to make an informal complaint of sexual harassment to a fellow National Guard member." This is simply not true. An "Informal Complaint" is specifically defined by the governing regulations to be a "complaint alleging illegal discrimination expressed verbally (or filed on NGB Form 333 with only the 'Informal'

block checked and initialed) to a member of the complainant's chain of command at any level, EOA or MEO staff, or other state NG officials." NGR 600-22, Glossary, at 37.

    12. There are several provisions within the NGR that specifically identifies to whom an informal complaint should and can be brought. For example, NGR 600-22, 2-1(a), states that:

> An informal complaint of discrimination, although it may be initially verbal, shall be put in writing on NGB Form 333 with only the "Informal" box checked and initialed by the complainant....An informal complaint may be brought to the attention of any member of the chain of command at the lowest level of command where a remedy or resolution is possible, or to the equal opportunity representative or equal opportunity advisor at that level.

    13.  Section 2-1(b) is even more specific:

> Military members who believe they have been illegally discriminated against are encouraged to discuss their complaints with and to seek assistance from their Equal Opportunity Representative or Advisor (ARNG) or their Wing Military Equal Opportunity personnel (ANG), or any member of their unit chain of command.

Nowhere does it indicate that the official policy is to encourage dissemination of sensitive sexual harassment allegations to simply any "fellow National Guard members". If that was the intent of our formal policy, it would have been specifically stated as such. This is supported by the policy notices provided to us within the Maryland National Guard. For example, Major General James F. Fretterd, who recently retired as The Adjutant General, issued a Sexual Harassment Policy on November 9, 1987, that indicated complaints of sexual harassment should be reported "through the chain-of-command." On February 1, 1995, Major General Fretterd issued a revised policy that indicated "Any person who believes they have been a victim of sexual harassment or any form of discrimination should contact either their chain of command, Equal Opportunity Officer, Social Actions Officer or the Equal Employment Manager as appropriate." These documents are attached to my declaration as Exhibit "A". At no time during the relevant

time period did Maj Mentges, Maj Willem or Maj Maurer fit any of the categories of persons for whom LtCol Diaz was supposed to bring an informal complaint of sexual harassment concerning LtCol Elders.

14. I particularly dispute Mr. Page's statement that "Under NGB-EO policy, an Air National Guard officer subjected to sexual harassment by her commanding officer is officially encouraged to discuss these allegations with her fellow officers prior to making a formal complaint." Neither the NGR, nor any other formal policy document I am aware of, supports this statement. In fact, the NGR states that "[i]f the complaint is brought against the company or squadron commander, then the informal complaint will be brought to the equal opportunity representative, or to a member of the chain of command at the next higher level of command (battalion/group)." Id. Based on LtCol Diaz's allegations, this is the exact circumstance that supposedly befell her. I can certainly state she never brought her complaint to me as one of the relevant EEO representatives. NGR 600-22, 2-7(a), also states that "[w]hen a military member believes that his or her commander was responsible for the alleged discrimination, the member will file the formal complaint with the next higher commander in the chain of command."

15. Mr. Page further asserts that "Free and open discussion of alleged incidents of sexual harassment among the officers of a State's Air National Guard is absolutely essential if sexual harassment is to be identified and eliminated within the National Guard. Such discussions directly benefit the good order and discipline and mission readiness of the National Guard." Not only is this not reflective of any military policy I know of, the very idea that it would "directly benefit the good order and discipline and mission readiness of the National Guard" for an officer who is allegedly experiencing sexual harassment from her commander to discuss her concerns with lower ranking subordinates and other National Guard members who have no authority to remedy the situation is outright absurd. Such actions would actually accomplish the opposite and disrupt good order and discipline, which is why the governing regulations are quite

5

specific in outlining how, to whom and in what manner informal complaints are to be brought.

16. I was completely stunned to hear of the sexual harassment allegations that LtCol Diaz had brought against LtCol Elders. In all the years I knew both officers, I never witnessed any interactions between the two of them that would alert me to the existence of a problem. Indeed, LtCol Diaz had privately indicated to me at times that she liked LtCol Elders and that he has been a good commander who takes care of his troops. I should state that not long before the allegations became known to me, I had personally informed LtCol Warren Thomas, the Deputy Commander, that LtCol Diaz's behavior (touchy-feely, especially hugging other enlisted members and officers within the unit) was unacceptable and it was just a matter of time before an allegation would take place. In fact, at our February 2002 UTA, LtCol Diaz publicly addressed our squadron and apologized for her being too "touchy-feely". She requested LtCol Elders to personally watch her behavior more closely.

17. Frankly, based on my twenty-five years of experience with the Maryland Air National Guard, the specific individuals involved, the facts as I know them and particularly because of my prior role as an EEO officer, I do not believe that LtCol Elders sexually harassed LtCol Diaz. Personally, reflecting back on all I know, I believe the allegations were fabricated in order to discredit LtCol Elders so that he would not be chosen for the position of Group Commander of the 135th Airlift Squadron.

18. During the period immediately following the allegation, I witnessed LtCol Diaz and LtCol Thomas literally meeting every day in closed-door sessions. As the flight surgeon, there was absolutely no reason for LtCol Diaz to have been meeting that often with LtCol Thomas. He is not even in her primary chain of command. However, LtCol Thomas was the only officer competing with LtCol Elders for the Group Command position, and LtCol Diaz was fully aware of this fact. It is my understanding that before LtCol Elders' sought the position, LtCol Thomas had already been told by the Group

Commander, Col Inglis, that he was the choice to succeed him. LtCol Elders was threatening that succession.

19. In addition to these meetings, I also observed an unusual number of private meetings between LtCol Thomas, Maj Mentges, Maj Wilkinson, Maj Mauer, and LtCol Diaz after it was known that the position of Airlift Group Commander was being advertised and LtCol Elders had applied for it. Again, why these individuals would have so many private meetings, particularly as a group, struck me as highly suspicious. These meetings occurred immediately after the allegations against LtCol Elders were made. The fact that Maj Mentges was one of the individuals who was allegedly confided in by LtCol Diaz concerning the sexual harassment allegations, and then took it upon himself to report them to Gen Beasley further fuels my suspicions. It is also relevant that in or around December 2001, after normal duty hours, I overheard a conversation between Maj Mentges and LtCol Todd Wilkinson where I heard racist remarks, such as the word "nigger", being used. Although I know it was the two of them having the conversation, I am not sure which one of them made the comment. In any event, it was well known that these two officers particularly disliked LtCol Elders, who happened to be one of the few African-Americans within the Maryland Air National Guard. In fact, LtCol Elders was the highest-ranking African-American member of the Maryland Air National Guard.

20. After Col Werts began his investigation of LtCol Diaz's allegations, the private "closed door" meetings between LtCol Thomas and LtCol Diaz intensified. However, now the meetings included Maj Maurer and Maj Wilkinson. I am not aware of any official Wing activities that would have brought these officers together on so many occasions.

21. Based on my reasoning set forth above, I do not believe LtCol Diaz was acting in the line of duty or her scope of employment when she stated her allegations of sexual harassment by LtCol Elders to Maj Mentges, Maj Willem and Maj Maurer, or any other individual who does not fall within the regulations I noted.

7

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date: May 18, 2003

/s/

_____

Charles Robinson