UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KARL L. ELDERS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. MJG-02-3892 |
| | * | |
| MARIA C. DIAZ | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### DECLARATION OF DAVID L. MCGINNIS

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this declaration in support of the Plaintiff's Opposition to Defendant Maria C. Diaz's Motion for Summary Judgment. Prior to making this declaration, I reviewed the plaintiff's First Amended Complaint and the defendant's Motion for Summary Judgment. In particular, I reviewed a copy of the declaration of Felton Page, Chief, National Guard Bureau, Directorate for Equal Opportunity. I also reviewed the applicable National Guard regulations that govern the filing of sexual harassment complaints, specifically NGR 600-22/ANGI 36-3 (National Guard Military Discrimination Complaint System).

2. I am a retired National Guard Officer who served a total of 29 years in the U.S. Army and the New York Army National Guard, including 23 years of Active Service. I retired from Active Duty in November 1995. At the conclusion of my active military service, the State of New York appointed me to the state reserve list with the Rank of Brigadier General. Following my retirement from military service I served two additional years. My last military assignment was in a civilian capacity as a Principle Director in the Office of the Secretary of Defense and, following that, three years as the Senior Fellow of the National Guard Association of the United States, culminating in May 2000.

3. During my military service I served in command and staff positions throughout the organizational structure of the Army, the Army National Guard, National Guard Bureau and the Department of Defense. I am a combat veteran of the Vietnam War and hold several awards, decorations and the Combat Infantryman Badge. I served eight years on the Staff of the Adjutant General of the State of New York including a four year tour as the Recruiting and Retention Manager shortly following the decision to allow Women to serve in the units of Army National Guard. Hence, I was deeply involved in the evolution of policies related to and stemming from the unforeseen consequences of that decision. I also served in the role of the senior leadership trainer for the New York Army National Guard, which meant commanding the state's military academy and overseeing the formal leadership training of all Company Commanders and non-commissioned officers. I have commanded U.S. Army and National Guard personnel in the Active and Inactive environment as well as supervised the Flight Surgeon, Civilian Personnel Officer and Equal Opportunity Officer of a Divisional Size Active Army Installation. At the National Guard Bureau I served as the Principle Staff Officer responsible for the organization, force structure and management of change of the Army National Guard, assisted the Director of the Army National Guard in the execution of his duties in the long absence of a Deputy Director and supervised a large directorate of military and civilian personnel. While there are some differences between the regulations that govern the Army and Air National Guards, these are usually subtle in nature, particularly when it comes to general policies involving discrimination and sexual harassment which typically emanate from the Department of Defense. I am a graduate of the U.S. Army War College and all subordinate professional military schooling.

4. My duties at the Department of Defense included monitoring all the factors related to the readiness, sustainability and future use of the National Guard and the Reserve.

5. The National Guard Bureau is not a military headquarters or a military service. It is a channel of communications between the several states and the military departments

of the Army and the Air Force on all matters pertaining to the Army and Air National Guard of the United States. It represents the Secretaries of the Army and the Air Force in the execution of their Congressionally delegated responsibilities for the "organization, discipline and equipping" of the Army National Guard and the Air National Guard. Permanent policies pertaining to these areas are defined and promulgated to the several states by regulations issued under the signature of the Chief National Guard Bureau in the name of the Service Secretaries. Interim policies are defined and promulgated by Policy Memorandum/Letter signed by the Chief, National Guard Bureau and contain a specific expiration date.

    6. The Army and Air National Guard is a part of the organized militia of the United States that is officered under the provisions of the sixteenth clause of section 8, Article I of our Constitution. The Army and Air National Guard of the United States are Federal Reserves of the U.S. Army and Air Force, and are the proper titles of the organized militia when they are on Actual Federal Service -- operative word being "actual".

    7. The President is the Commander in Chief of the Organized Militia when it is in Actual Federal Service. When the Army National Guard of the United States and Air National Guard of the United States are not in actual Federal Service they are administered as the Army National Guard and the Air National Guard - organized militia of the State under Title 32 of the U.S. Code.

    8. The Adjutant General is the position established in statute (Title 32 of the U.S. Code) as responsible to the Governor and the Service Secretaries for the readiness of the National Guard units in a state and is expected to perform this role as specified in the laws of that state. In few cases where his functions are specifically addressed in Federal statute they confirm his role as the senior executive for Federal programs, such as the National Guard Technician program, within his state.

    9. The National Guard Association of the United States (NGAUS) is an Association of the Several States chartered to represent them on matters pertaining to the organized

militia of the States before the Legislative and Executive Branches.  As the Senior Fellow of this association I provided analysis of public policy issues related to the relationship between the Army and Air National Guard and the Army and Air Force, their roles, functions, organizations, readiness, funding and long term involvement in National Security and maintaining domestic tranquility.

   10.  Policies promulgated by NGB Staff Principles, that are not officially implemented as already mentioned, are only applicable inside of that staff section, or possibly based on internal guidance issued by the Chief, or the Directors for Army and Air, internally in NGB and its field operating locations.  Staff officers, even Judge Advocates, recommend policy and implement policy issued by those given the statutory or command authority to make those decisions.  This in itself is necessary to the good order and discipline of any military organization.

   11.  Like the Commander, the Flight Surgeon, is not just another individual in the unit.  The Flight Surgeon is solely responsible to the Commander for the physical and mental well being of every member of the command associated with flight operations, and their immediate families.  The Flight Surgeon also enjoys a specific technical channel through the Flight Surgeon of the next higher command and/or supporting medical facility.  The Flight Surgeon is the sole authority on who in the unit is or is not mentally or physically fit to participate in flight operations, including the commander.  These facts calls for a very specific and trusting relationship between the commander and his surgeon that is essential to the unit's ability to maintained sustained operational performance when called upon.

   12.  Any one who has ever been a member or associated with military aviation - regardless of service - is familiar with this relationship.  Any overt breach of this relationship with other members of the organization outside of the next level of command or medical technical channel, regardless of topic, cannot be considered "in the line of duty", because it brings into question the credibility of the commander by an authoritative

4

source within the unit - the source itself of such disclosure makes it beyond "gossip", and gives it strong credibility. I would consider such an act grounds for relief of the Surgeon.

    13. Members of the Army and Air National Guard are resourced through Congressional appropriations administered through the Department of Defense. It is not a general appropriations but specific in statute to support and maintain these organizations. While members of the Army and Air National Guard are Federal Employees, they cannot be generalized in a common class because of the unique differences in their basis for existence, authorities and multiplicity of roles from all other Federal civil and military organizations, which is underscored by the fact that the Senior Executive of their program, when not in actual Federal Service is the Adjutant General of each state.

    14. The chain of command of the Army and Air National Guard terminates with the Governor of the State.  The investigative actions taken by the Chain of Command in this instance, once they became aware of the allegations, are consistent with their responsibilities.  This includes the decision of the Assistant Adjutant General to appoint a disinterested investigator and accept his recommendations.  Good commanders know bad news and bad apples don't improve with age, and that no matter how distasteful the best course of action is to get to the bottom of the situation and take the action required.  The steps taken by these Commanders are consistent with normal procedures addressing good order and discipline issues.

    15. It is my understanding based upon the documents I have reviewed, and the facts as they have been told to me, that the defendant, Maria Diaz, had repeated conversations over a period of several months with several members of the Maryland Air National Guard outside of her organizational command and technical chains - and subordinate to her - where she alleged the plaintiff was sexually harassing her.  Additionally, I have been told that the defendant provided sworn testimony that her statements were not intended to be anything other than private conversations among friends, and that she was not seeking any remedy or relief.

16. Based on my review of the defendant' Motion for Summary Judgment, it is obviously clear she is now alleging she filed an Informal Complaint of sexual harassment against the plaintiff in line with the appropriate regulations and policies of the National Guard in order to insulate herself from this litigation. I do not believe the defendant's arguments are correct.

17. Specifically, I fully disagree with the statement offered by Felton Page that the National Guard encourages officers to freely discuss allegations of sexual harassment with "fellow officers or other National Guard members." There is no such policy that I am aware of, nor is such a broad encouragement reflected in the existing regulations. Were such policy to exist, I would certainly expect Mr. Page to have specifically cited to the applicable provision and/or regulation or policy memoranda. Not to have done so simply renders his comments nothing more than personal opinion and, therefore, not official policy.

18. NGR 600-22/ANGI 36-3 is the operative regulation that governs the Army and Air National Guard, to include the Maryland Air National Guard, with respect to sexual harassment policies. As far as I am aware, it is the primary authority. It specifically defines what constitutes an "informal complaint" and the individuals to whom alleged victims are encouraged to go to if they believe they are being sexually harassed. An "Informal Complaint" is a "complaint alleging illegal discrimination expressed verbally (or filed on NGB Form 333 with only the 'Informal' block checked and initialed) to a member of the complainant's chain of command. Moreover, Section 2-1(b) specifically states that:

> Military members who believe they have been illegally discriminated against are encouraged to discuss their complaints with and to seek assistance from their Equal Opportunity Representative or Advisor (ARNG) or their Wing Military Equal Opportunity personnel (ANG), or any member of their unit chain of command.

19. Nowhere does it state that a complaint can or should be made to any "fellow National Guard member." This is for good reason. Such encouragement would be contrary to the very command structure policies and discipline that exists in the military.

20. The actions of the defendant clearly do not fall within the governing regulations. As I have explained above, it is inconceivable to me that a Lieutenant Colonel, particularly one who holds such an important position as flight surgeon, would ever be encouraged as a matter of official policy to seek out any fellow National Guard members to rely her allegations, especially to those who are subordinate officers who have no authority to remedy any concerns she might have against her commanding officer.

21. I absolutely agree with Mr. Page that a member of the National Guard should never be discouraged from making an informal complaint of sexual harassment. However, I do not believe the defendant ever made such a complaint. Under the circumstances, and pursuant to the applicable governing regulations, the alleged defamatory statements made by the defendant did not occur in the line of duty or within her scope of employment.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.
Date: May 17, 2003

/s/
_____
David McGinnis