UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KARL L. ELDERS | * | |
| Plaintiff, | * | |
| v. | * | Case No. MJG-02-3892 |
| MARIA C. DIAZ | * | |
| Defendant. | * | |

* * * * * * * * * * * *

### PLAINTIFF'S SUBMISSION OF PROPOSED DISCOVERY PLAN

This lawsuit involves claims of defamation and false light brought by plaintiff Karl L. Elders ("Elders") against defendant Maria C. Diaz ("Diaz"). Both Elders and Diaz were officers within the Maryland Air National Guard ("MD ANG") during portions of the relevant period. It is Elders' contention that none of the defamatory statements uttered by Diaz or repeated by third parties were made during their respective scope of employment.

By Memorandum and Order dated November 4, 2003, this Court denied Diaz's Motion to Dismiss and the government's Motion to Substitute Defendant. The Court granted Elders the right to pursue discovery on the question of scope of employment, and directed him to submit a proposed discovery plan.

### BRIEF FACTUAL SUMMARY

The alleged facts of this case are by now no doubt well known to this Court. See e.g., First Amended Complaint (filed March 3, 2003). During most of the period in question, both Diaz and Elders were traditional guardsmen (i.e., weekend warriors) with the Maryland Air National Guard ("MD ANG"). At the time the defamatory comments presumably began to be spread by Diaz, Elders was serving as the Squadron Commander of the 135th Tactical Airlift Squadron, and Diaz was the flight surgeon.

Since at least Fall 2001, Diaz has been falsely telling third parties, only some of whom have been identified thus far, that Elders sexually harassed and assaulted her. Id. at ¶¶6-7. Her false statements have been made to fellow National Guardsmen, id. at ¶8, to family members and friends, id. at ¶9, and to her personal family and business employees and medical co-workers, id. at ¶10. None of the statements at issue in this lawsuit were made as part of Diaz's scope of employment.

## STATEMENT OF REQUESTED DEPOSITIONS

The Court's November 4, 2003, Order noted that the plaintiff is to submit a "Statement of Requested Depositions relating to the question of whether Diaz made any allegedly defaming statements outside the scope of her employment and/or any privilege, setting forth, as to each deponent, including Diaz,

> a. The identity of the deponent;
> b. The place of employment or other connection with Diaz;
> c. The asserted basis for believing this person has relevant knowledge;
> d. The duration of the deposition requested."[1]

Whether or not Diaz was acting within the scope of her employment as a matter of law will be guided by Maryland's respondeat superior law. In Maron v. United States, 126 F.3d 317, the Fourth Circuit cited approvingly to how the district court had interpreted Sawyer v. Humphries, 322 Md. 247, 587 A.2d 467 (1991). Thus, to be within the scope of employment:

---

[1] Understandably, Elders does not wish to completely disclose his intended line of questioning to the defendant or the proposed witnesses. Nevertheless, he has attempted to clearly link the sought-after discovery with the specific legal/factual issue in question. However, if the Court believes more information is necessary in order to justify the taking of a particular deposition, Elders is more than willing to promptly submit an *ex parte* submission with additional details.

> the conduct must be of the kind the servant is employed to perform. Two, [it] must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area. Three, [it must be] actuated at least in part by a purpose to serve the master. Another important factor is whether the employee's conduct was expectable or foreseeable. And then[the case] goes on to discuss if there are personal motivations, it says in cases involving intentional torts committed by an employee, the Maryland Court has emphasized that where an employee's actions are personal or where they represent a departure from the purpose of furthering the employer's business or where the employee is acting to protect his own interest, even if during normal duty hours and at an authorized locality ... the employee's actions are outside the scope of his employment....

Maron, 126 F.3d at 324.

In order to properly explore and disprove the notion that the defendant was acting within the scope of her employment when she made and disseminated the alleged defamatory statements, it will, of course, be absolutely necessary to take the deposition of several individuals who are or were members of the MD ANG.

**Proposed Deposition Witnesses**

1.  a. *The identity of the deponent*: **Maria C. Diaz**
    b. *The place of employment or other connection with Diaz*: the defendant herself. She is a physician in private practice, and also maintains affiliation with Franklin Square Hospital in Baltimore, Maryland. She additionally serves as a physician with the MD ANG which is where she came to know Elders.
    c. *The asserted basis for believing this person has relevant knowledge*: Obviously, Diaz, as the defendant whose statements and actions are in question, is a primary witness. She possesses full knowledge of the extent to which she uttered the statements in question, the substance of those statements, to whom she made the statements, and the context in which she made the statements (i.e., civilian or military status, during work or off-duty, etc). For example, she revealed to the government investigator the names (which are redacted) of select individuals to whom she disseminated her statements concerning Elders. See Exhibit "10" at 6, attached to Plaintiff's Opposition to Defendant's Motion to Dismiss (filed May 19, 2003)("Pl's Opp."). Additionally, the defendant's understanding of the MD ANG sexual harassment complaint process and the degree to which she deliberately chose to ignore it are issues of direct relevance to the scope of employment issue. Id., Exhibit "11" at 7-8.
    d. *The duration of the deposition requested*: 7 hours.

2. a. *The identity of the deponent*: **Jorge Vallecillo**
   b. *The place of employment or other connection with Diaz:* The defendant's spouse.
   c. *The asserted basis for believing this person has relevant knowledge*: The defendant has admitted informing her spouse of the allegations. Id. While the specific substantive communications between them *may* be accorded absolute privilege and cannot serve as the basis for any defamation/false light claim, it is relevant, for example, to determine whether third parties were present during one or more of these conversations so as to destroy privilege, whether he personally repeated the allegations to third parties (such as neighbors or police officials as part of a complaint of stalking, id. at 13-14) or is aware of others who know of the allegations (except to the extent he learned this information from the defendant directly and solely), and when the conversations actually took place and the demeanor of the defendant at the time, none of which are protected by privilege.
   d. *The duration of the deposition requested*: 2 hours.

3. a. *The identity of the deponent*: **Raul Q. Willem**
   b. *The place of employment or other connection with Diaz*: Currently a lieutenant colonel with the MD ANG (as well as a civilian police officer) and colleague of the defendant.
   c. *The asserted basis for believing this person has relevant knowledge*: This witness was one of the individuals to whom the defendant revealed the alleged defamatory statements, and who then reported the contact to higher-ranking officials within the MD ANG. Id., Exhibit "2". Deposing him will enable exploration into the instances and circumstances surrounding the dates and places of the defendant's statements (and their respective status, military vs. civilian, on-duty vs. off-duty), the reasons why she told him the information, and his knowledge of the veracity of the information, all of which are directly relevant to scope of employment.
   d. *The duration of the deposition requested*: 4 hours.

4. a. *The identity of the deponent*: **James M. Mentges**.
   b. *The place of employment or other connection with Diaz*: Currently a lieutenant colonel with the MD ANG and colleague/friend of the defendant.
   c. *The asserted basis for believing this person has relevant knowledge*: Mentges was one of the individuals to whom the defendant revealed the alleged defamatory statements, and who then reported the contact to the MD ANG. The defendant has provided sworn testimony that she is personal friends with Mentges and his family. See Defendant Maria C. Diaz's Motion for Summary Judgment at Exhibit "5", at 5-6 (filed April 10, 2003). Additionally, statements that Mentges provided to the Maryland Air National Guard regarding information allegedly told him by the defendant contradict information stated by the defendant herself. For example, Mentges stated the defendant provided him information about Elders and the sexual harassment allegations as early as November 2001, but the defendant informed this Court in her sworn declaration that she had no such conversations before February 2002. Furthermore, deposing Mentges will enable exploration into the instances and circumstances surrounding the dates and places of the statements (and their respective status, military vs. civilian, on-duty vs. off-duty) and his

knowledge of the veracity of the information, all of which are directly relevant to scope of employment.

    d. *The duration of the deposition requested*: 5 hours.

5.   a. *The identity of the deponent*: **James M. Mentges' spouse**

    b. *The place of employment or other connection with Diaz*: Spouse of James M. Mentges and personal friend of the defendant.

    c. *The asserted basis for believing this person has relevant knowledge*: The defendant has provided sworn testimony that she is personal friends with this witness's family. Id. The extent to which this witness, who is not a member of the MD ANG, has knowledge about any of the allegations is directly relevant to the scope of employment issue, particularly as it pertains to third party republication liability.

    d. *The duration of the deposition requested*: 2 hours.

6.   a. *The identity of the deponent*: **Doris Maurer**

    b. *The place of employment or other connection with Diaz*: Currently a major with the MD ANG and colleague/friend of the defendant.

    c. *The asserted basis for believing this person has relevant knowledge*: She had numerous conversations with the defendant concerning Elders. She filed her own official statement concerning interactions with Elders that are relevant to this proceeding. The nature of her conversations with the defendant are directly relevant to the scope of employment issue, particularly as to whether there was a concerted personal effort by the defendant and others, to include Maurer, to conspire to destroy Elders' reputation. Several independent witnesses believed she was part of the defamation conspiracy which included trying to persuade women to pursue false charges against Elders. See Declaration of David M. Falter at ¶¶7,13-14,17 (dated May 18, 2003)("Falter Decl."), attached as Exhibit "5" to Pl's Opp.; Declaration of Charles Robinson at ¶¶19-21 (dated May 18, 2003)("Robinson Decl."), attached as Exhibit "6" to Pl's Opp. Furthermore, deposing Maurer will enable exploration into the instances and circumstances surrounding the dates and places of the statements which is directly relevant to scope of employment.

    d. *The duration of the deposition requested*: 3 hours.

7.   a. *The identity of the deponent*: **Warren Thomas**

    b. *The place of employment or other connection with Diaz*: Currently a lieutenant colonel with the MD ANG and colleague of the defendant.

    c. *The asserted basis for believing this person has relevant knowledge*: Thomas had numerous conversations with the defendant concerning Elders. The nature of his conversations with the defendant and others are directly relevant to the scope of employment issue, particularly as to whether there was a concerted effort by the defendant and others, to include Thomas, to personally conspire to destroy Elders' reputation. See Robinson Decl. at ¶¶19-21. His deposition will enable exploration into the instances and circumstances surrounding the dates and places of the defendant's statements which is directly relevant to scope of employment.

    d. *The duration of the deposition requested*: 3 hours.

8. a. *The identity of the deponent*: **Felton Page**
   b. *The place of employment or other connection with Diaz*: Chief, National Guard Directorate for Equal Opportunity. Felton filed a declaration in support of the defendant's Motion to Dismiss.
   c. *The asserted basis for believing this person has relevant knowledge*: Essentially served as an expert witness on the question of scope of employment with respect to the filing of sexual harassment complaints within the MD ANG. Elders should be permitted the opportunity to challenge his assertions and claims to demonstrate that the defendant acted outside the scope of her employment.
   d. *The duration of the deposition requested*: 4 hours.

9. a. *The identity of the deponent*: **David Beasley**
   b. *The place of employment or other connection with Diaz*: Formerly Brigadier General (now retired) with the MD ANG and a superior in the direct chain of command to the defendant.
   c. *The asserted basis for believing this person has relevant knowledge*: Beasley was the MD ANG official who received the complaints from Mentges and Willem regarding the defendant's statements. The information he was provided, and by whom and when, will impact the defendant's claim that she was acting within the scope of her employment. He also interviewed the defendant personally. He is in a position to know the sequence of events, and the status (i.e., military or civilian, formal or informal) of the defendant, as well as Mentges and Willem, at the time of the alleged statements. Moreover, as Beasley was a superior in the defendant's direct chain of command and one of the highest ranking officers within the MD ANG at the time, he can respond to questions concerning the proper filing process of sexual harassment allegations and whether the defendant made such statements within her scope of employment.
   d. *The duration of the deposition requested*: 2 hours.

10. a. *The identity of the deponent*: **Diane Kreinbrink**
    b. *The place of employment or other connection with Diaz*: Currently a Senior Master Sergeant with the MD ANG and a colleague of the defendant.
    c. *The asserted basis for believing this person has relevant knowledge*: Kreinbrink was asked to participate in an effort to remove Elders, which she believed to be a conspired effort to discredit Elders. See Falter Decl. at ¶14; Declaration of Mark S. Zaid at ¶11 (dated May 19, 2003), attached at Exhibit "3" to Pl's Opp.
    d. *The duration of the deposition requested*: 2 hours.

11. a. *The identity of the deponent*: **Todd Wilkinson**
    b. *The place of employment or other connection with Diaz*: Currently a lieutenant colonel with the MD ANG and a colleague of the defendant.
    c. *The asserted basis for believing this person has relevant knowledge*: Wilkinson submitted a sworn statement to the MD ANG and was interviewed by the investigator. See Exhibit "3-A". However, there is no reason why Wilkinson should have possessed knowledge of the allegations at that time. He was not in the defendant's chain of command, nor did he serve in a position that would enable him to take any steps to

correct any alleged problem between the parties. In fact, he was not even a member of the same squadron. Wilkinson is a "traditional" guardsman and was on active duty on Mondays. Yet, he was repeatedly seen in private discussions with the defendant and some of the other proposed witnesses on numerous occasions, which was unusual, in the relevant time period. He even went away on a trip with the defendant just before the allegations became the subject of an investigation. See Declaration of Karl Elders at ¶¶5,7a,d,h (dated May 18, 2003), attached at Exhibit "2" to Pl's Opp.; See Falter Decl. at ¶13,15,17. The nature of his conversations with the defendant and others are directly relevant to the scope of employment issue, particularly as to whether there was a concerted personal effort by the defendant and others, to include Wilkinson, to conspire to destroy Elders' reputation. His deposition will enable exploration into the instances and circumstances surrounding the dates and places of the defendant's statements which is directly relevant to scope of employment.
    d. *The duration of the deposition requested*: 3 hours.

12. a. *The identity of the deponent*: **Mike Vichich**
    b. *The place of employment or other connection with Diaz*: Formerly a lieutenant colonel with the MD ANG and a colleague of the defendant. Now assigned to the Headquarters Air Mobility Command, Scott AFB, Illinois.
    c. *The asserted basis for believing this person has relevant knowledge*: Vichich called Elders and his wife at their home and asked a lot of specific questions about the sexual harassment allegations. Vichich also specifically discussed the defendant's allegations with Major David Gessouroun. See Declaration of David Gessouroun at ¶¶3-5 (dated May 18, 2003), attached at Exhibit "12" to Pl's Opp Yet, he should not have known anything about the allegations given that he had already left the MD ANG by that time. Documents released by the MD ANG reveal that Vichich was in telephonic contact with Warren Thomas.
    d. *The duration of the deposition requested*: 2 hours.

Of course, there may be other witnesses who are identified through the taking of one or more of the above noted proposed deponents. For example, the defendant acknowledges having a discussion with a neighbor concerning issues that the defendant suspected were related to Elders. Id., Exhibit "11" at 13-14. However, the identity of this person is unknown. The plaintiff respectfully requests the ability to pursue – or at least the opportunity of filing a supplemental Statement of Requested Depositions - a limited number of additional depositions if needed in order to further demonstrate that the

7

defendant was not acting within the scope of her employment when she made one or more of her statements impugning Elders' reputation.

## PRODUCTION OF RELEVANT DOCUMENTATION

Finally, before any deposition testimony should take place, certain documents should be produced by the defendant and/or the government. Specifically, an unredacted version of the complete investigative report and related documents (particularly the interview statements) compiled by Colonel Arthur Werts should be released to the plaintiff.[2] See e.g., Pl's Opp. at Exhibits "3-A", "10"-"11", "13-14". These documents contain statements given under oath by the defendant and most of the witnesses listed above. While the contents of these statements by and of themselves cannot serve as the basis for any legal action given their privileged nature, they are certainly available under the federal rules, will lead to admissible evidence and can be used for impeachment purposes and as statements against interest.

The contents directly address the question of scope of employment. In fact, the defendant reveals when she made some of the statements and to whom, although much of the crucial information is redacted. The relevance is beyond question. In order to support their own arguments Diaz and the government unequivocally placed these documents into play by submitting redacted copies as part of its Motion to Dismiss to the Court for its consideration. See Def's Memo at Exhibits "A" and "B".

---

[2] Except for two of the witnesses, each witness's testimony was audio taped. See Pl's Opp. at Exhibit "3-A". Elders should be provided access to copies of these tapes in order to ensure the accuracy of the transcripts. A review of the transcripts provided does reveal the absence of stated testimony.

Justice requires that Elders be permitted the ability to review this information and utilize the documents during the depositions.

Dated: December 5, 2003

                                            Respectfully submitted,

                                            _____
                                            Mark S. Zaid, Esq.
                                            Krieger & Zaid, PLLC
                                            1747 Pennsylvania Avenue, N.W.
                                            Suite 300
                                            Washington, D.C. 20006
                                            (202) 454-2809