## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KARL L. ELDERS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. MJG-02-3892 |
| | * | |
| MARIA C. DIAZ | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO POST-HEARING
MEMORANDUM IN SUPPORT OF DEFENDANT MARIA C. DIAZ'S
MOTION REGARDING A DETERMINATION ON  THE MATTER OF
<u>SCOPE OF EMPLOYEMNT AND STRIKING EXHIBITS</u>**

### (ORAL ARGUMENTS REQUESTED)

Before this Court can address whether Defendant Maria C. Diaz ("Diaz") was acting within the scope of her federal employment it must first answer the penultimate question: what employment status was she in at the time of the incidents in question? Because the evidence unequivocally demonstrates Diaz was never employed by the federal government during the relevant period of time, the U.S. Government, which seeks to intervene in this case, has no role to play – plain and simple, period. That means as a matter of law and fact, the federal government's filings are null and void and no scope of employment question is before this Court until the State of Maryland raises it, if ever.[1]

---

[1]  By no means is it assured the State government will seek to intervene. In any event, that decision is for the State only. For a variety of reasons the State may never seek to intervene and defend Diaz's conduct. The federal government's position on this issue is irrelevant. And given that this is the State's ultimate decision, respectfully, this Court should not seek to speculate as to what action the State may or may not seek to pursue. The issue before this Court is whether the federal government can utilize the Westfall Act to shield Diaz's conduct as a federal employee.

By issuing a certification by the U.S. Attorney's Office that Diaz was acting within the scope of her federal employment the federal government seeks to substitute itself for her as the proper defendant and seek dismissal of this action. But if Diaz was not a federal employee than logic, and the law, dictates, the federal government <u>cannot</u> be a proper defendant to address the state torts Plaintiff Karl L. Elders ("Elders") has levied against Diaz.

At the end of the day, based on the facts before this Court, the litigation brought by Elders against Diaz is nothing more than a private, garden variety defamation action between two individuals. And it should be treated as such.

## <u>ARGUMENT</u>

The federal government argues that summary judgment is not available to Elders based on an unsupported allegation of procedural error and that "[a]t this stage of the process it is for the Court to determine the sufficiency of the evidence and resolve the contested scope-of-employment issue." <u>See</u> Post-Hearing Memorandum in Support of Defendant Maria C. Diaz's Motion Regarding a Determination on the Matter of Scope of Employment and Striking Exhibits and Opposing Plaintiff's Motion for Summary Judgment at 5 (filed August 29, 2005)("Govt. Memo").[2] Yet the federal government entirely misunderstands what its role is in this case, and where the burden lies in order to prove scope of employment. The federal government does not, and never has, belonged in this case. It has interjected itself without any legitimate or lawful basis in law and it is

---

[2] It should be noted that although the federal government is claiming that Elders' attempt to seek summary judgment is inappropriate due to the existence of a factual dispute, the U.S. Attorney's Office did not file a declaration pursuant to Fed.Rule.Civ.Proc. Rule 56(f). <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 324 (1986)(noting nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial).

improperly seeking this Court to essentially accord standing to it and accord jurisdiction over an issue that does not exist in the posture of this case.

In order to demonstrate that Diaz was acting in the scope of her federal employment the U.S. Attorney's Office must first prove that she was, in fact, a federal employee.[3] Otherwise the U.S. Attorney's Westfall certification is irrelevant. The only evidence that exists before this Court regarding Diaz's lawful employment status is that she was acting as a state, not federal, employee (which does not necessarily equate to her acting within her state scope of employment). The U.S. Attorney's certification is therefore null and void as it relies on a federal statute that has absolutely no applicability to this proceeding. If the State of Maryland desires to intervene in its own right and assert that Diaz was acting within her state scope of employment, then the Attorney General of Maryland surely knows the proper procedure for doing so.

Nor is it proper for the federal government to assert the <u>Feres</u> doctrine proscribes dismissal of an action that is not against the U.S. Government, a federal entity or a federal employee.

## I. THE FEDERAL GOVERNMENT HAS FAILED TO MEET ITS BURDEN TO DEMONSTRATE IT IS A PROPER DEFENDANT BECAUSE DIAZ WAS NEVER A FEDERAL EMPLOYEE DURING THE RELEVANT TIME PERIODS

The Supreme Court has mandated that the mere fact that the United States Attorney has certified Diaz was acting in the scope of her federal employment is

---

[3] It should be noted that this is by no means the first time that Elders has challenged the fact that Diaz was not acting as a federal employee. Throughout his May 19, 2003, Opposition brief Elders very clearly challenged the federal government to prove Diaz was a federal employee. <u>See</u> Memorandum of Law in Support of Plaintiff's Opposition to Defendant Maria C. Diaz's Motion to Dismiss at *passim* (filed May 19, 2003). Yet the U.S. Attorney's Office never sought to do so.

simply not enough. <u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417 (1995). <u>See also</u> <u>Maron v. United States</u>, 126 F.3d 317, 321 (4th Cir. 1997)(recognizing "the recent <u>Gutierrez</u> decision means we may no longer decline to judicially decide whether substitution is proper.").

Despite the case law that decries the certification in this case carries no evidentiary weight because it neither contains any "details" or "explains the bases for its conclusion." <u>Maron</u>, 126 F.3d at 323, <u>see also</u> <u>Wood v. United States</u>, 995 F.2d 1122, 1123 (1st Cir. 1993)(Westfall Act certificate cannot simply deny the basic "incident" charged); <u>McHugh v. University of Vermont</u>, 966 F.2d 67 (2d Cir. 1992)(same), the federal government merely waves those deficiencies off with little explanation other than to claim the burden is on Elders. Govt. Memo at 11.

Nevertheless, the Court need not reach the question of whether Diaz acted within the scope of her federal employment because it must first determine the status of her employment. That status, as a matter of law, was of a state employee.

**A. The Westfall Act Does Not Authorize The Federal Government's Intervention In This Matter As Diaz Was Not A Federal Employee At The Time She Made Her Defamatory Statements**

The U.S. Attorney has claimed that "Diaz was acting within the scope of her *federal* employment" under Section 2679 of Title 28 of the U.S. Code. <u>See</u> Govt. Memo at 10 (emphasis added). When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) provides that:

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United

4

> States under the provisions of this title and all references thereto,
> and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679 (d)(1).

Whether a particular defendant is covered under the Federal Tort Claims Act ("FTCA") requires a two-part analysis. First, a court must determine whether the defendant actually was a federal employee and this determination is based on federal law. Allender v. Scott, 379 F. Supp. 2d 1206, 1211 (D.NM. 2005), citing Pattno v. U.S., 311 F.2d 604, 605 (10th Cir. 1962), cert. denied, 373 U.S. 911 (1963).[4] See also Berkman v. United States, 957 F.2d 108, 111 (4th Cir. 1992) ("FTCA, by its own terms, applies only to the acts of federal employees"); Wood v. Standard Products Co., 671 F.2d 825, 829 (4th Cir. 1982)(determining whether defendant is federal employee is critical question); Brooks v. A.R.& S. Enterprises Inc., 622 F.2d 8, 10 (1st Cir. 1980)(for FTCA to apply court must decide whether defendant was federal employee); Chin et al. v. Wilhelm, 291 F.Supp.2d 400, 403 (D.Md. 2003)(noting FTCA applies to "federal employees"). Second, whether the employee was acting within the scope of his employment is analyzed under the law of respondeat superior of the state where the injury occurred. Williams v. United States, 350 U.S. 857 (1955).

---

[4] In fact, the Pattno case bears exceptional relevance to this dispute as it conveniently addressed the question of whether members of the Wyoming Air National Guard were acting as federal or state employees at the time an alleged tort was committed. The 10th Circuit recognized that the identity of the employee must first be decided before determining whether the Guard member was acting within their scope of employment. In fact, the decision was that the Guard members were not employees of the federal government. Id. 311 F.2d at 606-607.

The FTCA is quite specific regarding the scope of the federal government's authority under the Westfall Act in this matter. Diaz can only be considered an employee of the federal Government *while engaged in training or duty under sections 316, 502, 503, 504, or 505 of Title 32*. 28 U.S.C. § 2671 (emphasis added). See Ursulich v. Puerto Rico Nat'l Guard, 384 F. Supp. 736, 740 (D.Pr. 1974)(critical element in determining whether National Guardsman is employee of United States is whether or not he is in active Federal service). There are no exceptions or caveats to this legal and factual requirement.

Elders has submitted two official MD ANG documents obtained directly from the files of the MD ANG that demonstrate that Diaz was not in federal status during the relevant time period. See Declaration of Karl L. Elders at *passim* (dated October 6, 2005)("Elders Decl."), attached at Exhibit "1". Moreover, Elders was Diaz's direct supervisor and can state with authority that she was not in federal status during the relevant time period. Id. at ¶¶6,9. The burden, therefore, has been satisfactorily shifted back to the U.S. Attorney's Office to prove otherwise. As the U.S. Attorney's Office itself notes, "[a]t all stages of the competing factual contest relative to the scope-of-employment issue, the district court must weigh the sufficiency of the evidence and resolve the factual issue." See Govt. Memo at 11 citing Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000).

Elders has proven "by a preponderance of the evidence that the defendant[] [was] not acting within the scope of [her] employment" because she was *never* in federal employment status. Maron, 126 F.3d at 323. Having done so, the federal

government "must provide evidence and analysis to support its conclusion that

the torts occurred within the scope of employment." <u>Id</u>.  That means it must first

demonstrate Diaz was a federal employee before the Court can even turn its

attention to whether she acted within the scope of her federal employment. If, as

the federal government claims, Diaz was a federal employee then where is the

documentation to support such a significant assertion? Where are the sworn

statements from relevant personnel to contradict the documents that Elders has

submitted to this Court?

    1.   <u>This Court Is Not Limited To Evidence Adduced At The Evidentiary Hearing In Order To Address The Scope Of Employment Question</u>

As the Court knows, it held an evidentiary hearing on May 4, 2005, to further

explore the facts surrounding the scope of employment controversy. Of course, an

evidentiary hearing is utilized to assist a court in reaching a determination

regarding a particular question such as scope of employment. In fact, there was no

obligation on the Court to even hold an evidentiary hearing. It could have, if it

had chosen, to simply decide the issue on the papers that had been previously

filed by the parties on this very issue.

Of course, the Government never argued at any prior stage or voiced a

concern regarding documents submitted by Elders that the Court should not

consider them. Nor did it ever question the authentication or origins of the

documents Elders submitted or offer as evidence any authenticating data for those

documents it previously submitted (such as MD ANG investigative records that

Diaz had no access to). The Government is only complaining now because the

documents

submitted by Elders conclusively demonstrate that the federal government's entire involvement in this matter is based on an illusion.

The Government baldly asserts that it was

> Elder's burden to adduce competent, admissible evidence at the May 4, 2005 hearing but he did not do so. Elders cannot now adjure the Court to fill that gap and consider unauthenticated documents that were not admitted into evidence during the scope-of-employment evidentiary hearing. Elders's Exhibits 7 and 8 were not made part of the record developed during the evidentiary hearing and thus cannot properly and fairly be considered by the Court now and the exhibits should be stricken.

Govt. Memo at 12-13.

There is <u>no</u> requirement that every piece of relevant evidence must be submitted or discussed at the evidentiary hearing in order to justify or permit its consideration by the Court. Were such a limitation to exist either in statute, regulations, case law, the local rules of this District or Circuit or originating from an Order of this specific Court, the federal government surely would have cited to it. Yet it did not for none exist.[5]

In attempting to circumnavigate around the absence of federal jurisdiction based on Diaz's employment status, the U.S. Attorney's Office argues and relies upon completely irrelevant facts and law. There is absolutely nothing within the lone case cited by the federal government, <u>Singleton v. United States</u>, 277 F.3d 864 (6th Cir. 2002), that supports the premise. Even if this 6th Circuit case was binding on this Court, there is no suggestion in <u>Singleton</u> that can be used to argue Diaz was in federal rather than state employment status. Conveniently, the U.S. Attorney's Office declined to address the numerous cases that quite clearly

---

[5] Under the federal government's argument then even Diaz's deposition, which this Court authorized specifically in order to allow Elders to explore discovery on the scope of employment question, could not be cited as evidence. Such a perverse result cannot be supported by the government. It should be noted that Exhibit "7" to Elders' Summary Judgment Motion was introduced as evidence during the January 2004 deposition and its authenticity was not challenged.

articulate that Diaz was in state, and not federal, status. <u>See</u> Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment Regarding the Government's Certification on Scope of Employment at 12-16 (filed July 13, 2005)("Elders' Mot."). In fact, this very district handled a defamation case between two Guard members where the U.S. Attorney's Office declined to pursue Westfall certification in a National Guard lawsuit because "*matters arising in the context of the Guard involve no federal interest.*" <u>Kenneally v. Bayer</u>, 760 F.Supp. 503, 505 (D.Md. 1990)(emphasis added). The inconsistency of these two positions cannot be overlooked.

Despite knowing Elders has been challenging the federal status of Diaz's employment since at least 2003, the federal government failed to adduce any evidence whatsoever through testimony at the evidentiary hearing, or in any earlier filing, that converts Diaz's state role to that of federal. The mere fact that her conversations might have taken place on base, <u>see</u> Govt. Memo at 13, is irrelevant to whether Diaz was in federal status.

> 2. <u>Elders Has Shifted The Burden Back To The U.S. Attorney's Office To Prove That Diaz Was Acting As A Federal Government Employee</u>

Exhibits "7" and "8", which clearly reveal that Diaz was in state, not federal, status, are more than sufficient to push the burden back to the federal government to prove otherwise. Mere insinuations by Government counsel that perhaps these documents are not authentic cannot be permitted to satisfy even the most minimal prima facia burden that must be met by the federal government in this instance. The MD ANG can easily verify the authenticity of the two documents given they originate from MD ANG computer systems. Indeed, Elders has supplied the

names of at least two MD ANG employees who can conduct the verification. <u>See</u> Elders Decl. at ¶10. [6]

The Supreme Court has explained that members of the National Guard can wear three hats - a civilian hat, a state militia hat, and a federal hat – but only one of which is worn at any particular time. <u>Perpich v. Dep't of Defense</u>, 496 U.S. 334, 348 (1990). <u>See also</u> Rendell et al. v. Rumsfeld et al., 2005 U.S. Dist. Lexis 18098 (E.D.Pa. Aug. 26, 2005)(discussing historical and legal relationship between state national guard and federal government in ruling that federal government could not close a Pennsylvania Air National Guard unit).

This Court, as a matter of fact and law, must first decide which hat Diaz was wearing at each time she disseminated her defamatory remarks against Elders. The documentary record submitted by Elders demonstrates she was wearing her state hat (though this does not necessarily mean Diaz was acting within the scope of her state employment, that is a separate question). Unless the U.S. Attorney's Office can prove otherwise, the federal scope of employment issue is null and void, and irrelevant to this case. The federal government cannot be substituted as a proper defendant and its motion must be denied.

---

[6] As the D.C. Circuit has noted, a plaintiff challenging the government's scope-of-employment certification "need only have alleged sufficient facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment." <u>Stokes et al. v. Cross et al.</u>, 327 F.3d 1210, 1216 (D.C.Cir. 2003). The Court also noted that the plaintiff was not "required to allege the existence of evidence he might obtain through discovery…. He was merely required to plead sufficient facts that, if true, would rebut the certification." <u>Id</u>. (citation omitted). Certainly Elders, through Exhibits "7" and "8" has pled sufficient facts to rebut the certification.

## II. EVEN WERE DIAZ TO BE CONSIDERED A FEDERAL EMPLOYEE SHE WAS NOT ACTING WITHIN THE SCOPE OF HER EMPLOYMENT

Should this Court rule that Diaz was a federal employee, Elders' case still does not merit dismissal as Diaz was not acting within the scope of her federal employment. Elders has already set forth in details the reasons why this Court should rule in his favor on this point, and he specifically incorporates those arguments in response to the federal government's opposition/cross-motion. See Elders' Mot. at 16-29. However, two premises asserted by the federal government require clarification.

First, the federal government's argument that Diaz was authorized to utilize, or justifies her utilization of, third parties to spread her defamatory allegations reflects a fundamental misinterpretation of NGR-600-22/ANGI 36-3. See Govt. Memo at 18-19. The regulation says no such thing. The provision merely provides a framework for the processing of discrimination complaints received from third parties. It does not condone the complainant making allegations to third parties.

Second, there is no basis to claim that the letters Diaz sent to Senator Mikulski and then Governor-elect Robert Erhlich were privileged. Id. at 20-21. For one thing, the issue of privilege has nothing to do with scope of employment, and the federal government has failed to identify any cases that support otherwise. Moreover, the degree to which any privilege may or may not exist, or whether any communication is or is not defamatory in nature, is neither before this Court nor an issue that can be properly raised by the federal government. The only argument that properly belongs to the federal government is whether or not its

11

Westfall certification and the FTCA require substitution of the United States as the defendant.

### III. GIVEN THE FEDERAL GOVERNMENT HAS NO ROLE IN THIS CASE THE QUESTION OF DISMISSAL UNDER THE <u>FERES</u> DOCTRINE IS A MOOT POINT[7]

Given that the federal government has absolutely no place in this litigation since Diaz was not a federal employee during the period of time in question and the Westfall Act only covers federal employees, as both the statute and numerous cases have made clear, there is no need for this Court to even adjudicate the question of whether the <u>Feres</u> doctrine applies in part of in whole to this matter. To be sure, Diaz has no authority to invoke the doctrine in her own right. Until this case reaches a posture where the federal government is involved, for example in a later discovery period, discussion of the <u>Feres</u> doctrine is premature.

The same applies should the issue of scope of employment be decided in Elders' favor. In that circumstance as well the U.S. Government has no further role to play in this case. In fact, the only role for the U.S. Government at this time is to argue that Diaz acted in her scope of *federal* employment.

Although the Government has repeatedly sought dismissal of this case through the <u>Feres</u> doctrine's "incident to military service" test, it should be noted that test is legally distinct from scope of employment. <u>See</u> <u>Valdiviez v. United States</u>, 884 F.2d 196, 198-99 (5th Cir. 1989)(Feres doctrine's "incident to service" inquiry is distinct from the FTCA scope of employment inquiry); L. Jayson, Handling Federal Tort Claims § 216.01, at 9-162 (1990)("the fact that a serviceman's activities would be considered 'incident to service' for purposes of

---

[7] In 1950, the Supreme Court ruled that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." <u>Feres v. United States</u>, 340 U.S. 135, 146 (1950). This became known as "the <u>Feres</u> doctrine."

the application of the Feres doctrine ... does not necessarily make those same activities within the scope of employment for the purposes of determining the Government's liability under respondeat superior doctrine").

**A. Even Were The Federal Government's Invocation Of The <u>Feres</u> Doctrine Appropriate, Dismissal Of This Case Is Not Justified As A Matter Of Law**

The fact that an evidentiary hearing was held in this case already demonstrates that the <u>Feres</u> doctrine has little to no place here, and certainly can not serve to permit dismissal of the entire action. Several members of the MD ANG have already testified in open court and it would appear no damage to the military system has taken place. Military discipline and effectiveness remain in place for the MD ANG.[8]

The U.S. Attorney's Office argues that "it makes no difference, for purposes of intramilitary immunity, whether the United States or Lt. Col. Diaz is the party-defendant. **The identical standard controls.** <u>Id</u>. Accordingly, even if the United States is not substituted as the defendant in this case, the Court may dismiss it under the intramilitary immunity doctrine." <u>See</u> Govt. Memo. at 27 (emphasis original). Yet the federal government failed to cite to even <u>one</u> case that supports this overreaching premise. No known cases exist that support the notion that a court should dismiss a case under the <u>Feres</u> doctrine where the federal government is not a defendant or the individual defendant was not acting within their federal scope of employment.[9] The U.S. Attorney's Office cannot cite to

---

[8] In referring to the May 4, 2005, evidentiary hearing, the federal government claims that this "involved the judicial branch in sensitive military affairs at the expense of military discipline and effectiveness." <u>See</u> Govt. Memo at 29-30. Not surprisingly, no explanation - indeed, not even a single reference to testimony - was provided to support such a conclusory statement.

[9] The FTCA sets forth the specific parameters of the scope of the government's waiver of sovereign immunity under circumstances where claims are asserted

even <u>one</u> case where the <u>Feres</u> doctrine was used to dismiss a claim against either a state national guard employee or an individual acting within a non-military capacity.

### B. Intramilitary Immunity Does Not Preclude This Action As The Torts In Question Were Not Incidental To Military Service

Three rationales have been promoted to support the <u>Feres</u> exception to the broad waiver of sovereign immunity contained in the FTCA. <u>See</u> <u>United States v. Johnson</u>, 481 U.S. 681, 688 (1987); <u>Bradley v. United States</u>, 161 F.3d 777 (4th Cir. 1998). "First, '[t]he relationship between the Government and members of its armed forces is "distinctively federal in character."'" <u>Johnson</u>, 481 U.S. at 689 (alteration in original), <u>quoting</u> <u>Feres</u>, 340 U.S. at 143. Since Diaz was not a federal employee during the relevant period of time, <u>see</u> <u>infra</u>, this rationale is inapplicable.

"Second, the existence of ... generous statutory disability and death benefits is an independent reason why the <u>Feres</u> doctrine bars suit for service-related injuries." <u>Id</u>. This premise, of course, has no relationship with the types of claims at issue in this particular case.

Finally, "suits brought by service members against the Government for injuries incurred incident to service are barred by the <u>Feres</u> doctrine because they are the 'type[s] of claims that, if generally permitted, would involve the judiciary

---

against the United States, a specific federal agency or a federal employee acting within the scope of employment. Although permitting some suits, Congress withheld the government's consent to be sued for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Court Guard, during time of war." 28 U.S.C. § 2680(j). Of course, none of the claims at issue in this litigation arose out of "combatant activities" or occurred "during time of war." Although it may very well be that during later discovery proceedings the federal government could argue to preclude the deposition of a specific MD ANG service member were it demonstrated that the individual was in federal employment status at the time of the events, this argument is not yet ripe.

in sensitive military affairs at the expense of military discipline and effectiveness.'" Id. at 690, quoting United States v. Shearer, 473 U.S. 52, 59 (1985).[10] Although this final rationale is the primary basis for the federal government's arguments, it cannot be ignored that this case is not against the federal government.

Moreover, this third rationale is the most controversial. The Supreme Court has stated that intramilitary immunity generally applies to bar claims brought by service members directly under the Constitution pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation, 403 U.S. 388 (1971), against military personnel supervising the claimants, Chappell v. Wallace, 462 U.S. 296 (1983), as well as to others exercising military responsibility. United States v. Stanley, 483 U.S. 669 (1987).

"[P]ractically any suit that 'implicates the military judgments and decisions,' ... runs the risk of colliding with Feres." Persons v. United States, 925 F.2d 292, 295 (9th Cir. 1991), quoting Johnson, 481 U.S. at 691. In determining whether the "incident to service" test is met, a key inquiry is "whether the suit requires the civilian court to second-guess military decisions ... and whether the suit might impair essential military discipline." Shearer, 473 U.S. at 57. "[T]he focus of Feres is not upon when the injury occurs or when the claim becomes actionable, rather it is concerned with when and under what circumstances the negligent act

---

[10] As the years have past, the Feres doctrine has increasingly come under attack, including by Justices of the Supreme Court. See Johnson, 481 U.S. at 694-700 (Scalia, J., Dissenting). One reason is that intrusions by courts to grant equitable relief in military matters have become more familiar in recent years. Id. at 700. Indeed, it is relevant that this case also seeks equitable, in addition to monetary, relief. Elders has specifically requested that Diaz make a public retraction and apology, and that an injunction be issued prohibiting her from further disseminating defamatory comments. See First Amended Complaint at 7 (filed March 3, 2003)("FAC"). The D.C. Circuit has ruled that equitable claims are not precluded by the Feres doctrine. Brannum v. Lake, 311 F.3d 1127 (D.C.Cir. 2002).

occurs." <u>Kendrick v. United States</u>, 877 F.2d 1201, 1203 (4th Cir. 1989). The

Fourth Circuit has further clarified that "[i]f a suit requires *deep inquiry* into

military decisions or would *strongly impact* military discipline, the <u>Feres</u> doctrine

will bar it." <u>Minns v. United States</u>, 155 F.3d 445, 449 (4th Cir. 1998), <u>cert.

denied</u>, 525 U.S. 1106 (1999)(emphasis added).[11] Otherwise, the case can go

forward.

The federal government seeks to improperly expand the impact of <u>Feres</u>,

<u>Chappell</u> and <u>Stanley</u> to encompass all state claims against individual military

defendants (and particularly defendants who were neither acting in federal service

or in their scope of employment). The Fourth Circuit Court of Appeals in the

unpublished case of <u>Scott v. Rice</u>, 7 F.3d 226 (4th Cir. 1993), 1993 WL 375664,

rejected the application and expansion of the exact type of broad immunity now

sought by the federal government.

> With respect to the application of the intramilitary immunity
> doctrine to actions brought pursuant to 42 U.S.C.§ 1983, we
> reject the district court's conclusion that <u>Chappell</u> and <u>Stanley</u>
> compel dismissal in this case. <u>Chappell</u> and <u>Stanley</u> were
> damages actions brought directly under the Federal Constitution,
> <u>see</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of
> Narcotics</u>, 403 U.S. 338, 406 (1971), in which the Supreme
> Court held that the unique disciplinary structure of the military
> was a "special factor counseling hesitation," <u>Chappell</u>, 462 U.S.
> at 300; <u>Stanley</u>, 483 U.S. at 681, in the judicial creation of a
> damages cause of action for service persons deprived of
> constitutional rights. Although some circuits have extended the
> reasoning of <u>Chappell</u> and <u>Stanley</u> to cases brought against state
> officers (or against federal officers acting under color of state

---

[11]The Fourth Circuit was also persuaded that "<u>Feres</u> seems best explained by the
peculiar and special relationship of the soldier to his superiors, the effects of the
maintenance of such suits on discipline, and the extreme results that might obtain
if suits under the Tort Claims Act were allowed for negligent orders given or
negligent acts committed in the course of military duty." <u>Minns</u>, 155 F.3d at 448.
None of these factors are confronted by Elders' claims. Diaz was not Elders'
superior, military discipline was not involved, and because Diaz was not acting in
the scope of her federal employment, there is no FTCA issue.

law) pursuant to 42 U.S.C. § 1983, <u>see</u> <u>Crawford v. Texas Army Nat'l Guard</u>, 794 F.2d 1034, 1035-36 (5th Cir. 1986)(citing cases), we need not do so.[12] In <u>Williams v. Wilson</u>, 762 F.2d 357, 359-60 (4th Cir. 1985), we adopted the four-part test first propounded in <u>Mindes v. Seaman</u>, 453 F.2d 197, 201-02 (5th Cir. 1971)[<u>affirmed</u> <u>on</u> <u>appeal</u> after <u>remand</u>, 501 F.2d 175 (5th Cir. 1974)], for determining whether particular actions of military authorities are properly reviewable by the civilian courts outside the <u>Bivens</u> context. Having endorsed the <u>Mindes</u> test, we must apply it-not <u>Chappell</u> or <u>Stanley</u>-to determine the reviewability of non-Bivens actions against military defendants. <u>See</u> <u>Guerra v. Scruggs</u>, 942 F.2d 270, 276 (4th Cir. 1991).

<u>Id</u>. at *2.

The <u>Mindes</u> Court determined that a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intra-service corrective measures. <u>Mindes</u>, 453 F.2d at 201. If a plaintiff seeking review of a military decision sufficiently alleges the appropriate violation, and exhaustion of administrative remedies, or if no such remedies are available, the court must then examine the substance of the allegations in light of the policy reasons that militate in favor of not reviewing military decisions. <u>Id</u>.

---

[12]Of course, there can be no question that Elders' claims are based solely on state law. He has alleged claims for defamation and false light. These are neither federal nor constitutional in nature. "Under Maryland law, to present a prima facie case for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." <u>Gohari v. Darvish</u>, 767 A.2d 321, 327 (Md. 2001). Diaz has acknowledged that false light is an actionable state offense under Maryland law. <u>See</u> Memorandum in Support of Defendant Maria Diaz's Motion to Dismiss and Reply to Plaintiff's Opposition to the Defendant's Removal Notice and Motion to Substitute the United States as the Sole Party Defendant in the Above-Captioned Matter at 2 fn.1 (filed Dec. 16, 2002).

17

The Fifth Circuit articulated four factors for a court to analyze:

> (1) The nature and strength of the plaintiff's challenge to the military determination. An obviously tenuous claim of any sort must be weighted in favor of declining review;
> (2) The potential injury to the plaintiff if review is refused;
> (3) The type and degree of anticipated interference with the military function. Interference that would "seriously impede the military in the performance of vital duties" militates strongly against relief;
> (4) The extent to which the exercise of military expertise or discretion is involved. Courts should defer to superior knowledge and experience of professionals in matters such as military personnel decisions or other areas that relate to specific military functions.

Id. Application of the Mindes factors demonstrates the inapplicability of Feres to these circumstances. First, and most clearly, there is not one military determination at issue or being challenged in this litigation. There were no disciplinary proceedings instituted. The litigation will not require "deep inquiry into military decisions" nor will it "strongly impact military discipline." Minns, 155 F.3d at 449. Adjudication would not "impede a commanding officer in performing the "vital duty," ... of exercising his own discretion and military expertise with respect to personnel matters." Scott, 7 F.3d 226, 1993 WL 375664 at *2. This was already perfectly demonstrated at the evidentiary hearing when multiple witnesses testified from the MD ANG.

Second, the potential injury to Elders if review is refused is undeniable. He has absolutely no other recourse to pursue for the actions committed by Diaz. Third, not only will this lawsuit not "seriously impede the military in the performance of vital duties," but there are no military functions that will be interfered with even in the slightest. The sexual harassment charges against Elders were found to be unsubstantiated. Thus, there will be no need for this Court to "second-guess" any military decisions. Shearer, 473 U.S. at 57.  Nor does there

18

exist any concerns surrounding the officer-subordinate relationship. It is very significant that the MD ANG considered Diaz to be Elders' subordinate. Courts have cautioned against "entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers", <u>Trerice v. Summons</u>, 755 F.2d 1081 (4th Cir. 1985), but this concern primarily exists solely from bottom-up, not top-down. That the U.S. Attorney's Office finds this distinction inexplicable, even if it involves an alleged victim of sexual harassment, is no reason for this Court to reject the consistent rationale of numerous other districts and circuits. <u>See</u> Govt. Memo at 27.

Finally, this is a defamation lawsuit, plain and simple. There are no military personnel decisions or other areas that relate to specific military functions that are involved. The military has no special expertise or discretion in handling defamation cases or even sexual harassment matters. This defamatory tort action is no different from circumstances that would have existed if Diaz and Elders had been in an automobile accident with each other at a stop sign, and other members of the MD ANG either were caught in a collision chain reaction or had witnessed the incident. <u>See</u> <u>Ross v. Bryan</u>, 309 F.3d 830 (4th Cir. 2002)(<u>Feres</u> did not prevent claims arising from automobile accident that occurred on military base between military servicemembers). <u>See also</u> <u>Johnson v. United States</u>, 704 F.2d 1431, 1437 (9th Cir. 1983)(rejecting as myopic the view "that if a serviceman is injured while on-base, he cannot recover under the FTCA, whatever the cause of the injury," in favor of broader exploration of the totality of the circumstances).

1. <u>Elders' State Law Claims Are No Different From Those Similar Claims That Overcame A Defense Of Intramilitary Immunity And Were Permitted To Proceed By Several Circuit Courts Of Appeals And District Courts</u>

As a broad pronouncement the government claims that at "least two circuits have squarely held that sexual harassment claims by members of the Armed

19

Forces are barred by the intramilitary immunity doctrine." <u>See</u> Govt. Memo at 27. However, this case is not about sexual harassment. It is solely about defamation.

Although the Fourth Circuit's decision in <u>Scott</u> provides ample reason to deny the federal government's motion, three cases from three different Courts of Appeals that present similar facts to the instant matter should further persuade this Court that intramilitary immunity does not apply.[13]

First, this case is very similar to that addressed by a very respected panel of the Seventh Circuit in <u>Cross v. Fiscus</u>, 830 F.2d 755 (7th Cir. 1987), where a commanding officer filed a state law defamation claim against three enlisted men who had complained about his conduct. As the Court explained:

> Enlisted men often say nasty things about officers behind their backs. Military discipline forbids many kinds of challenges to the authority of officers, and even the permitted challenges have their risks. The military services allow people to go over the heads of their commanding officers to complain of wrongdoing, real or imagined. Roger Fiscus, Donald Rathburger, and Jesse Hicks, three gunnery sergeants of the 4th Marine Division (Reserve) stationed in Chicago, complained about the conduct of Lt. Colonel Charles Cross, the commanding officer of its 2d Battalion, 24th Regiment. They took the risk that Cross's superiors would absolve him of wrongdoing and think ill of them for making unfounded complaints. Instead the superior officers removed Cross from his command, although they declined to impose other discipline. Cross retaliated with a suit accusing the sergeants of defamation.

<u>Id</u>. at 755. This fact pattern is analogous to the instant matter. Yet, the Seventh Circuit expressly ruled that the <u>Feres</u> doctrine was inapplicable to the situation of a state law defamation claim. It distinguished between FTCA claims against the

---

[13] The Fourth Circuit has additionally expressly declined to apply the <u>Feres</u> doctrine to all claims simply because somehow the military is involved, particularly when the claims are "based upon a truly independent or post-service tort." <u>Kendrick</u>, 877 F.2d at 1204 n.2. <u>See also</u> <u>Blakey v. U.S.S. Iowa</u>, 991 F.2d 148 (4th Cir. 1993)(<u>Feres</u> doctrine does not preclude recovery for independent negligent acts by military if acts occur post-service and are not incident to military activities)(citations omitted).

United States, which is the umbrella for <u>Feres</u>, and claims against federal

employees under <u>Bivens</u>. [14]

Although the Seventh Circuit did rule that immunity nonetheless applied, this

was because the individual defendants had acted within their "outer perimeters"

of duty, i.e., were within their scope of employment when they filed official

complaints through their chain of command. <u>Cross</u>, 830 F.2d at 757. Notably, the

Court opined:

> The sergeants are not policy-making employees of the Marines,
> and gunnery sergeants do not regularly evaluate the conduct of
> their superior officers; nonetheless, providing such evaluations
> within the chain of command is among the privileges of enlisted
> personnel. U.S. Navy Regulations Art. 1139 (1973). Higher
> officers are entitled to know -- if it is true -- that an officer is not
> behaving properly. That enlisted personnel may provide
> misinformation rather than the truth does not contract the scope
> of their duties, under the approach of Gregoire. On the sole
> ground of absolute immunity, the judgment is AFFIRMED.

<u>Id</u>. at 758. As with the sergeants, Diaz was not a policy-making employee of the

MD ANG. She was considered by the MD ANG to be Elders' subordinate, not

superior. And the defamatory statements that are at issue did not take place in the

course of filing either a formal or informal complaint through her chain of

command or to an EEO representative.

Second, in <u>Lutz v. Secretary of Air Force</u>, 944 F.2d 1477 (9th Cir. 1991), a

former major in the United States Air Force filed state law claims against three

Technical Sergeants who had broken into her office, took personal papers and

disseminated the information in order to injure her reputation and career. <u>Id</u>. at

---

[14] The Sixth Circuit has also permitted a National Guard member to sue another
National Guard member for defamation without interference by the <u>Feres</u>
doctrine, although because of certification that the defendant had acted within
the scope of their federal employment, thereby substituting the United States, the
lawsuit was eventually dismissed under the FTCA. <u>See</u> <u>Singleton v. United
States of America</u>, 277 F.3d 864 (6th Cir. 2002).

1478. The documents implied she was involved in a lesbian relationship. Id. at 1479. Both the district court and the Ninth Circuit ruled that the Feres doctrine did not apply because the defendants' actions were not "activities incident to service."

> [N]ot every action by one member of the armed services against another implicates military decision making, relates to the military mission, or is incident to service. Here three subordinates had a personal vendetta against a superior. They broke into her office after hours, opened her private mail, and disseminated it in an attempt to ruin her reputation. It seems hardly possible that this conduct or the resulting injury to the victim "arises out of or is incident to service."

Lutz, 944 F.2d at 1484.

The Court rejected each and every one of the government's arguments, all of which have also been asserted as grounds for dismissal in the instant matter:

> Appellants focus on Major Lutz's status as an active duty military officer, on the fact that Lutz and the sergeants were all "subject to military discipline," and on the fact that the damage she alleges was to her career in the military. These criteria are overbroad, however, and violate Stanley's express rejection of a rule which would "disallow [claims] by servicemen entirely." 483 U.S. at 681. That is, every lawsuit by one active-duty member of the military against another would clearly implicate the first two factors, and any suit involving an injury impairing the plaintiff's ability to continue working would involve damage to his or her "military" career. For example, had the sergeants physically assaulted Lutz to get back at her, causing injuries which prevented her from continuing in her occupation, the same factors would apply. We find it inconceivable that Feres would be read to preclude a suit against the individual defendants in such a situation. While the absence of active-duty status or subjection to military discipline may defeat the application of Feres, see McGowan [v. Scoggins], 890 F.2d 128 [9th Cir. 1989], their presence is insufficient, standing alone, to invoke Feres.

<u>Lutz</u>, 944 F.2d at 1485-86.[15] This Court, as did the Ninth Circuit, should finally

declare that "even <u>Feres</u> concatenations must come to an end." <u>Id</u>. at 1487.

     Finally, the First Circuit specifically analyzed the "incident to service test" in

the context of state tort claims and the interplay of the <u>Feres</u> doctrine in <u>Day v.</u>

<u>Massachusetts Air National Guard</u>, 167 F.3d 678 (1st Cir. 1999). Day was an

airman in the Massachusetts Air National Guard who was subjected to a hazing

incident on the military base by other Guard members. He filed both federal and

state claims against the Guard, the Department of the Air Force and named and

unnamed individuals. <u>Id</u>. at 680. The First Circuit determined that the <u>Feres</u>

doctrine does bar the federal claims against all defendants, as well as the state

claims against the United States and its components, but <u>not</u> the state claims

against any individual who acted outside their scope of employment (which was a

reversal of the district court's decision). <u>Id</u>. The Court ruled that:

> The incident to service test itself has become a talisman,
> although perhaps not so intended (Justice Jackson spoke also of
> "service connected" injuries, <u>Feres</u>, 340 U.S. at 142). Courts
> have sought to determine whether an injury was incident to
> service by asking whether it occurred on a military facility,
> whether it arose out of military activities or at least military life,
> whether the alleged perpetrators were superiors or at least acting
> in cooperation with the military, and--often stressed as
> particularly important, <u>see</u> <u>Johnson</u>, 481 U.S. at 686 & n.7--

---

[15]The Ninth Circuit also found unpersuasive the government's argument that the individual defendants' actions were "incident to service" because it was "their duty to report any violations of Air Force regulations by their superior officers to the appropriate authorities. While the existence of such a duty would likely immunize them from liability for making colorable reports of violations to superiors, we echo the district court's conclusion that 'it is not conceivable that this duty required defendants to remove personal documents from their commander's desk after working hours and distribute them to other Air Force personnel.'" <u>Lutz</u>, 944 F.2d at 1486. Thus, any claim in this case that Diaz's reporting of the alleged incidents were incident to service because of a duty to report instances of sexual harassment to military personnel should be rejected, at least to the extent her comments were not part of a formal/official investigative process.

whether the injured party was himself in some fashion on
military service at the time of the incident. No single element in
the equation, the Supreme Court has said, is decisive. See
Shearer, 473 U.S. at 57.

The First Circuit seemingly echoed the Fourth Circuit's wisdom in Scott and
took careful notice that "the Supreme Court has not yet taken this step of
converting Feres into an immunity for individuals against state law claims. To do
so would mean that military service personnel who were the victims of serious
intentional torts inflicted by other service personnel on base would effectively be
denied any civil remedy against a wrongdoer who was not acting within the scope
of his military employment--a result that has caused more than one court to
blanch." Day, 167 F.3d at 684.

The Feres doctrine already protects the federal treasury, and the "core
concerns of Feres about military discipline are largely--although not entirely--
assuaged by the ability of the United States to certify under the Westfall Act those
state-law claims against military personnel which it believes are sufficiently
related to the defendant's duties to fall within the scope of defendant's
employment." Id.[16]

In addition to these three Circuit Courts of Appeals cases, decisions within
this very district also support Elders' position. Consider, for example, Kenneally,

---

[16]The Court concluded that "[t]he issue is very close and the Supreme Court may
yet take the step of converting Feres into a formal immunity barring state law
claims against individuals for conduct, however unauthorized and deliberate, that
causes injury to the plaintiff incident to military service. But the risk of some
injustice is manifest, the policy arguments for the extension are at the margin, and
the Supreme Court has been increasingly loath to override state law in areas of
traditional state responsibility without a clear Congressional mandate. See
Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 605 (1991). If the step is to
be taken, it should be taken by the Supreme Court or upon more evidence that
without it military autonomy will be seriously threatened." Day, 167 F.3d at 685.
See also Durant v. Tassin, 884 F.2d 1350, 1351 (10th Cir. 1989) ("intra-military
immunity should not be applied to shield military personnel from common-law
actions based on their nonmilitary conduct"), cert. denied, 110 S.Ct. 728 (1990).

760 F.Supp. 503, which also dealt with defamation claims filed by one National Guard member against another.[17] The defendant - a Lieutenant Colonel in the D.C. National Guard - allegedly placed a telephone call to the Office of Presidential Personnel (OPP) and allegedly made a defamatory statement about the plaintiff - a Colonel in the D.C. National Guard who was his Commander - to the effect that plaintiff used illegal drugs. Id. at 504. The defendant claimed that intramilitary immunity required dismissal of the lawsuit. The Court, however, declined to apply intramilitary immunity because the defendant must first establish that he was performing a military act by making the alleged call to OPP. Id. citing Durant, 884 F.2d at 1354; Brown v. United States, 739 F.2d 362 (8th Cir. 1984), cert. denied, 473 U.S. 904 (1985).

As Diaz's actions cannot be deemed to have been "incident to service", Feres and the doctrine of intramilitary immunity do not apply.

2.   No Privilege Exists To Shield Diaz's Defamatory Comments

Unlike the federal government's prior attempts to claim a distinct conditional or absolute privilege exists to shield Diaz's defamatory comments, for the first time the federal government now seeks to incorporate these alleged privileges as part of a Feres argument. See Govt. Memo at 30-32. Not only is there no legal

---

[17] In what appears to be one of the only Maryland state court decisions that touched upon the Feres doctrine, which in fact occurred in litigation involving the Maryland Army National Guard, the Court of Appeals noted that the "Feres doctrine has been applied almost exclusively in the context of claims alleging specific negligence or other wrongful conduct on the part of named or ascertainable individuals, the liability of the Government in those instances being vicarious." Estate of Burris, 360 Md. at 744 fn.6, 759 A.2d at 815 fn.6. There is no vicarious liability on the part of the Government in this case.

justification to incorporate these privileges into the <u>Feres</u> doctrine, even standing alone the privileges offer no protection to Diaz.[18]

The federal government asserts that as a matter of law all statements Diaz made to her fellow National Guard Members are covered by an absolute privilege on the basis of <u>Mangold v. Analytic Services, Inc.</u>, 77 F.3d 1442, 1447 (4th Cir. 1996). <u>Id</u>. at 30.[19] <u>Mangold</u>, however, simply extended to private government contractors the protections afforded federal employees by <u>Barr v. Matteo</u>, 360 U.S. 564, 569-73 (1959) and <u>Westfall v. Erwin</u>, 484 U.S. 292, 295 (1988). In <u>Barr</u> and <u>Westfall</u>, "the Court recognized an absolute immunity from state law tort liability for federal officials exercising discretion while acting within the scope of their employment." <u>Mangold</u>, 77 F.3d at 1446.[20] Thus, statements provided by

---

[18] Elders notes again that under the circumstances the invocation of any potential privilege as a defense is completely inappropriate for the federal government to assert. These are affirmative defenses that belong to Diaz individually, and the United States Government should not be providing free legal assistance to a private citizen in a civil lawsuit. It is one thing to assert intramilitary immunity, a defense that seemingly belongs to the government, and a Westfall Certification regarding scope-of-employment, but whether or not privileges exist are defenses to be brought by Diaz after the government is out of the case.

[19] "For reasons of public policy, the law of defamation recognizes certain communications as privileged, and thereby affords those who publish such communications immunity from liability. The privilege, and the resultant immunity enjoyed by the publisher, may be either absolute or qualified." <u>Miner v. Novotny</u>, 304 Md. 164, 167, 498 A.2d 269, 270 (Md.App. 1985). "An absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of the conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused." <u>Id</u>. quoting <u>DiBlasio v. Kolodner</u>, 233 Md. 512, 522, 197 A.2d 245 (1964).

[20] Because absolute immunity has its costs "since illegal and even offensive conduct may go unredressed", "the common law immunity recognized in <u>Barr</u> and <u>Westfall</u> is afforded only to the extent that the public benefits obtained by granting immunity outweigh its costs." <u>Mangold</u>, 77 F.3d. at 1447 (citations omitted).

federal employees as part of official government investigations are accorded absolute immunity from liability. Id.

Elders has never disputed that any statements that Diaz provided as part of an official investigation are protected (even if Diaz was not acting as a federal employee from a policy prospective Elders still agrees there is a privilege under such circumstances). Indeed, Elders specifically carved such statements out of his First Amended Complaint. See FAC at ¶13.  Of course, this absolute privilege applies only to "federal officials exercising discretion while acting within the scope of their employment." Mangold, 77 F.3d at 1446.  Diaz was neither a federal official nor acting within her federal scope of employment. See infra.

The federal government additionally seeks to expand Mangold's absolute privilege to cover not only communications Diaz made as part of official investigations but to all statements she ever made to any member of the MD ANG. In making this argument the federal government does not even bother to articulate its legal position. Instead, it seeks to incorporate arguments set forth in a  brief filed two years ago. See Govt. Memo at 32.

This is entirely improper. If the government wishes to make this argument, it should be required to set forth its rationale in the present time. Given this fact, at this time, Elders refers the Court to his responses to the government's arguments as set forth in his Opposition brief filed on May 19, 2003. Finally, it is also noteworthy to observe that the government's prior invocation of this specific argument pertained to a conditional or qualified privilege rather than an absolute one. Apparently the government has abandoned its prior position, which makes it even more difficult to follow the government's legal basis for asserting the privilege now.

## **CONCLUSION**

Based on the foregoing, this Court should grant Elders' Motion, deny the

Government's Motion, and allow the litigation to proceed accordingly.

Date:   October 7, 2005

Respectfully submitted,

/s/

_____

Mark S. Zaid, Esq.
Federal Bar #023887
Krieger & Zaid, PLLC
1920 N Street, N.W.
Suite 300
Washington, D.C.  20036
(202) 454-2809
ZaidMS@aol.com

ATTORNEY FOR PLAINTIFF