```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

KARL L. ELDERS                      *

          Plaintiff                 *

          vs.                       *    CIVIL ACTION NO. MJG-02-3892

UNITED STATES                       *

          Defendant                 *

*     *     *     *     *     *     *     *     *
```

## MEMORANDUM AND ORDER

The Court has before it Plaintiff's Motion for Summary Judgment Regarding the Government's Certification on Scope of Employment [Paper 55], the United States' Motion to Substitute Defendant [Paper 6], and the materials filed in regard thereto. The Court has reviewed the materials and has had the benefit of an evidentiary hearing on the issue of scope of employment.[1]

I.   BACKGROUND

The instant suit is based upon allegedly false assertions of sexual harassment made by a Maryland Air National Guard ("MD ANG") officer, Defendant Maria ("Diaz"), against another MD ANG officer, Plaintiff Karl Elders ("Elders"). The case was filed in

---

[1] An evidentiary hearing regarding the issue of whether Defendant Diaz's allegedly defamatory statements were made during the scope of her employment with MD ANG was held on May 4, 2005. All citations within this memorandum to a hearing transcript refer to the transcript of this evidentiary hearing.

the Circuit Court for Baltimore County. The Government removed the case to federal court and moved to substitute the United States as the defendant based on the United States Attorney's[2] certification that Diaz was acting within the scope of her federal employment at the relevant times. Elders asserts that the certification is incorrect and that Diaz defamed him outside the scope of her federal employment.

Elders seeks a determination establishing that the certification is incorrect and that Diaz acted outside the scope of her federal employment when she defamed him. Diaz seeks a determination that the certification was correct.

II. <u>LEGAL SETTING</u>

It appears procedurally inaccurate to label Elders' motion as one for summary judgment rather than a determination regarding the certification of scope of employment.

When a federal employee is sued on a tort claim the United States Attorney may certify that the "defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose...." 28 U.S.C. § 2679 (d)(1) (2006). Upon successful invocation of the

---

[2] The United States Attorney is authorized by the Attorney General under 28 C.F.R. § 15.3 to certify that a federal employee acted within the scope of her federal employment.

certification, the individual employee is dismissed from the case and the United States is substituted as defendant.  Id.  The case would then proceed against the Government under the Federal Torts Claims Act ("FTCA").

The FTCA confers immunity to the Government for defamation claims.  Johnson v. Carter, 983 F.2d 1316, 1323 n. 9 (4th Cir. 1993) (noting that the United States has not waived immunity in defamation suits) (overruled on other grounds by Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 115 S. Ct. 2227, 132 L. Ed. 2d 375 (1995)).  Accordingly, if the United States is substituted as the defendant in this defamation suit, the case must be dismissed because of sovereign immunity.

The United States Attorney has certified that Diaz was "acting within the scope of her employment as an employee of the Air National Guard, a reserve component of the United States Air Force, at the time of such incident [i.e. the alleged tortious action]."  Filing of State Court Papers Pursuant to Local Rule 103.5 at 4.  The certification provides prima facie evidence that Diaz was acting within the scope of her employment during the alleged tort.  Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997); Singleton v. United States, 277 F.3d 864, 870 (6th Cir. 2002).  Therefore, to maintain his suit, Elders must prove by a preponderance of the evidence that Diaz's alleged defamatory

3

statements were not made while she was acting within the scope of her employment with MD ANG.  Maron, 126 F.3d at 323.  If Elders produces persuasive evidence refuting the certification, the Government must "provide evidence and analysis to support its conclusion that the tort[] occurred within the scope of employment."  Id.

Whether an employee is acting within the scope of his employment is to be determined by the Court.  Id. at 323-24.  See also Jamison v. Wiley, 14 F.3d 222, 227 n.2 (4th Cir. 1994).  For the purposes of certification and substitution, the issue of whether a federal employee acted within the scope of her employment is governed by state law.  Maron, 126 F.3d at 324.

Under Maryland Law,[3] an employee acts within the scope of her employment if her conduct was in furtherance of the employer's business and was authorized by the employer.  Sawyer v. Humphries, 587 A.2d 467, 470 (Md. 1991).  In this context, "authorized" means that the act was incident to the performance of the duties entrusted to the employee by the employer.  Larson v. Chinwuba, 832 A.2d 193, 200 (Md. 2003).  Conduct within the scope of employment "must be of the kind the servant is employed to perform and must occur during a period not unreasonably

---

[3] There is no dispute as to the application of Maryland law to the instant case.

4

disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." Sawyer, 587 A.2d at 471 (quoting E. Coast Lines v. M & C.C. of Balto., 58 A.2d 290, 304 (Md. 1948)).

However, "where an employee's actions are personal, or where the employee is acting to further his own interests, the conduct is normally outside the scope of employment." Ennis v. Crenca, 587 A.2d 485, 490 (Md. 1991) (citing Sawyer, 587 A.2d at 471). Elaborating on this idea, the Maryland Court of Appeals stated:

> particularly in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

Sawyer, 587 A.2d at 471.  Furthermore, "[w]here the conduct of the servant is unprovoked, highly unusual, and quite outrageous," the conduct in and of itself can be sufficient to indicate that the conduct was personally motivated and outside of the scope of employment.  Id. (quoting Prosser & Keaton, The Law of Torts §70 (5th ed. 1984)).

Accordingly, the issue in the instant case is whether Diaz's conduct was "in furtherance of the [MD ANG's] business and

5

incidental to it, or, instead, was in furtherance of [Ms. Diaz's] interests." Ennis, 587 A.2d at 490.

III. DISCUSSION

    A.    Scope of Employment

The allegedly actionable statements were made by Diaz to three other MD ANG employees, Major Wilkinson, Major Willem, and Major Mentges, from about November 2001 to about March 2002.[4]

Elders claims that Diaz was not even a federal employee. Before 1981, the courts viewed national guard personnel as state employees for tort liability purposes, unless they performed a peculiarly federal function. Maryland ex rel. Levin v. United States, 381 U.S. 41, 44 (1965); Storer Broadcasting Co. v. United States, 251 F.2d 268, 269 (5th Cir. 1958). However, Congress amended the Federal Tort Claims Act in 1981 to redefine federal employees for the purposes of that act. By virtue of that

---

[4] Major Wilkinson spoke with Diaz in December 2001 or early January 2002, during the first and last week of February 2002, and had conversations with her about the Plaintiff during the first week of March 2002. Wilkinson, Statement; Record of 10 March 2002 Interview of Major Todd Wilkinson. Major Willem spoke with the Defendant during the last week of February 2002. Willem, Memorandum for Record (March 7, 2002). Major Mentges states that his conversations with the Defendant began in the fall of 2001 and continued until March 2002. Mentges, Memorandum for Record (March 8, 2002); Record of 10 March 2002 Interview with Major Michael Mentges.

amendment, 28 U.S.C. § 2671 now provides: "'Employee of the government' includes... members of the National Guard while engaged in training or duty under sections 115, 316, 502, 503, 504, or 505 of Title 32...."  Thus, the United States is liable for negligent acts by a National Guard member engaged in training or duty pursuant to those statutory sections.[5]  See 28 U.S.C. 2671.  Otherwise, the National Guard "is under the direct order of the State Governments."  U.S. v. Hawaii, 832 F.2d 1116, 1119 (9th Cir. 1987) (quoting H.R. Rep. No. 384, 95th Cong., 1st Sess. 2 (1981), reprinted in 1981 U.S. Code Cong. & Admin. News 2692).

Elders has not presented evidence refuting Diaz's contention that she was in training or on duty so as to have been a federal employee during the pertinent period.[6]  The evidence demonstrates that the conversations in which Diaz allegedly made the defamatory statements took place on the MD ANG base while both Diaz and the other officers were on duty.  Accordingly, the

---

[5] The sections listed in 28 U.S.C. § 2671 concern: funeral service (115), detail of members of Army National Guard for rifle instruction of civilians (316), required drills and field exercises (502), participation in field exercises (503), National Guard school and small arms competitions (504), or Army and Airforce schools and field exercises (505).

[6] Plaintiff's "evidence," even if properly authenticated, would consist of Diaz's military orders (Pl.'s Ex. 7) and the schedule of Unit Training Assemblies (UTAs) held between November 2001 and March 2002 (Pl.'s Ex. 8).  These do not refute the Government's contention regarding federal employment status.

Government's certification is not incorrect on the grounds that Diaz was not a federal employee during the relevant time period.

Plaintiff further contends that, even if Diaz was a federal employee when the conversations took place, she was acting outside the scope of her federal employment. Under Maryland law, a scope of employment determination is a fact based inquiry; however, it is often helpful to consider what other courts have done in cases presenting somewhat similar issues.

In <u>Larsen v. Chinwuba</u>, 832 A.2d 193 (Md. 2003), an Insurance Commissioner's allegedly defamatory disclosures were held within the scope of his employment because (1) as the head of a major agency in the executive branch of government he was authorized to disclose to the public matters concerning the agency's operations and (2) the disclosures were made during the regular course of business and related entirely to the operations of the Insurance Administration. <u>Id</u>. at 201. In contrast, the Maryland Court of Appeals in <u>Ennis v. Crenca</u>, 587 A.2d 485 (Md. 1991), held that the Defendant's alleged false statements to the press were not within the scope of her employment as an elected official in the Montgomery County Council. <u>Id</u>. at 490. The court stated:

> It is difficult to understand how [the defendant] could
> have been fulfilling her duties as a local legislator,
> or in any way furthering Montgomery County's business,
> by publicly accusing Ms. Ennis of offering her money to
> pay campaign debts in order to influence her vote on a

> controversial development proposal, when the defamatory conduct took place 76 days after the alleged bribe and long after the council's vote. It is more reasonable to infer from the facts alleged that [the defendant's] public statements were made to discredit Ms. Ennis and other political opponents in order to protect [the defendant's] career as an elected official.

Id.

The Fourth Circuit, applying Maryland law, addressed the question whether allegedly defamatory statements by several federal employees were made within the scope of their employment as doctors at the National Institute of Health (N.I.H.) in Maron v. United States, 126 F.3d 317 (4th Cir. 1997). The Fourth Circuit upheld the District Court's determination that the doctors' statements were made within the scope of their employment because "the complained-of acts... were of the sort that doctors at the N.I.H. are hired to perform." Id. at 326. Those acts included answering the phone, publishing papers, performing experiments, and providing a recommendation concerning the Plaintiff's job performance. Id.

While the instant case presents a close question as to whether Diaz's allegedly defamatory remarks were within the scope of her employment, Elders has the burden of proof on the issue.

It is true that Diaz did not pursue formal grievance proceedings and that she did not intend her conversations with fellow officers to be steps in the course of informally

9

presenting a compliant. However, she was speaking with fellow officers on the job, seeking advice as to her best course of action in regard to interacting with Elders - an interaction that would, by necessity, be on the job. In fact, she was told by these fellow employees that she needed to report the alleged sexual harassment formally. The bottom line is that the allegedly actionable statements about Elders were made in a work context for a work related purpose. Moreover, Diaz's conduct, even if assumed to consist of false accusations of sexual harassment in a few private conversations, was not was so outrageous as to negate the overwhelming work related aspect of the statements.

While there are reasonable arguments to be made on both sides of the question, the Court concludes that Elders has not carried his burden of proving that the allegedly tortious activity was not within the scope of Diaz's federal employment.

Accordingly, the Court upholds the United States Attorney's Certification that Diaz was acting within the scope of her federal employment during the alleged tort. Consequently, the Court must substitute the United States as the Defendant, apply the Federal Tort Claims Act and dismiss the case by virtue of the Government's sovereign immunity from defamation claims.

B.  Intramilitary Immunity Claim

The Court notes Diaz's contention in her opposition to Plaintiff's motion that, regardless of the scope of employment finding, she is entitled to the protection of the intramilitary immunity doctrine.

In Feres v. United States, the Supreme Court held that members of the military are barred from bringing tort suits against the United States for injuries that "arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). The line of cases which have followed Feres have found the doctrine applicable to members of the National Guard. Brown v. United States, 739 F.2d 362 (8th Cir. 1984), cert. denied, 473 U.S. 904, 105 S. Ct. 3524, 87 L. Ed. 2d 650 (1985)). Furthermore, "[t]he Circuit and District Courts have extended this intra-military immunity from suit to all military personnel sued by other servicemen or women, and have also extended the immunity to encompass common-law tort claims." Deckinger v. Castro-Reyes, 689 F. Supp. 531, 534 (D. Md. 1988). See also Trerice v. Summons, 755 F.2d 1081, 1084 (4th Cir. 1985) ("Feres itself is a bar to any common law tort claims").

It appears that the application of Feres immunity is a legally distinct inquiry from determining whether an alleged tort is committed within the scope of the defendant's military

employment.  Lutz v. Secretary of Air Force, 944 F.2d 1477, 1488 (9th Cir. 1991).  See also Valdiviez v. United States, 884 F.2d 196, 198-99 (5th Cir. 1989) (Feres doctrine's "incident to service" inquiry is distinct from the FTCA scope of employment inquiry).  Therefore, even if the Court held that the defamatory acts were outside the scope of Diaz's employment it is possible that she would be entitled to immunity under Feres.  The Court would, if it were to reach the Feres issue, require Diaz to file a motion and the parties to brief and argue the issues presented.

## IV.  CONCLUSION

For the foregoing reasons:

1. Plaintiff's Motion for Summary Judgment Regarding the Government's Certification on Scope of Employment [Paper 55] is DENIED.

2. The Court determines that Diaz was acting within the scope of her federal employment at the times pertinent to the instant case.

3. The United State's Motion to Substitute Defendant [Paper 6] is GRANTED.

4. The United States is substituted as the party Defendant.

5. The case is dismissed by virtue of the Government's sovereign immunity under the FTCA for defamation claims.

6. Judgment shall be entered by separate Order.

SO ORDERED, on <u>Tuesday, February 21, 2006</u>.


<u>         / s /          </u>
Marvin J. Garbis
United States District Judge